State *v.* Dresser.

APPLETON, C. J., CUTTING, DICKERSON, BARROWS and DANFORTH, JJ., concurred.

———————

## STATE *versus* DAVID DRESSER.

Upon the issue raised by a replication to a plea of misnomer, that the defendant was known as well by the name in the indictment as by that in the plea, the presiding Judge, after stating to the jury the question at issue, illustrated it as follows : — "If a stranger should go * * where the defendant is known and inquire for the house of "the person named in the indictment, "would those of whom he inquired recognize the man inquired for as well by that name as by the name used in the plea?" "If so, the issue is made out for the government;" — *Held*, the illustration is unexceptionable.

State *v.* Dresser.

Upon a general demurrer to an indictment, it is the duty of the presiding Judge to rule.

If the indictment is adjudged good, the prisoner may except.

If his exceptions are overruled, or if no exceptions are taken, judgment will be rendered for the State, unless, at the time of demurring, the accused has, with the consent of the prosecuting officer, reserved the right to plead anew.

And, in these respects, there is no distinction between felonies and misdemeanors.

## On Exceptions.
### Indictment for Larceny.

Defendant seasonably filed a plea in abatement, alleging that his name was David *D.* Dresser, and not David Dresser, and that he has never been called or known as well by the latter as by the former. To this plea, the attorney for the State replied, that the defendant was known as well by the one name as the other. Thereupon the issue was submitted to the jury.

It appeared in evidence that, until recently, the defendant had resided in Stetson, — that his father and brothers lived there. There was also testimony on both sides as to the name he was known by. It was admitted that his true name was David D. Dresser.

The jury having returned a verdict for the government, the instructions of the presiding Judge upon this issue (see opinion) were excepted to by the defendant. Thereupon the defendant filed a general demurrer to the indictment, which was joined. The defendant then contended that the issue of law, thus made, carried the case to the full Court; that the presiding Judge had no right to rule upon this issue; and that the defendant had the right to have the issue of law settled by the full Court, before a trial upon the merits could be had. But the presiding Judge ruled that it was his duty to rule upon the demurrer, to which ruling the defendant might except; that such was his proper mode of carrying the case to the full Court, and thereupon overruled the demurrer and ordered the defendant to trial on the merits. And the defendant excepted.

*Kimball*, for the respondent, contended —

That the rule concerning a plea of misnomer in abatement is, that every person charged with crime shall be prosecuted under his real name; and, to defeat a plea of misnomer, it should appear that a portion of the community know him by the name alleged in the indictment, and not by the name in the plea; and that those who know him by the name in the plea, do not know him by the name in the indictment.

*C. P. Stetson, County Attorney, contra.*

CUTTING, J. — The defendant was indicted for the larceny of certain personal property, and pleaded misnomer in abatement. Issue was joined on the replication that he was known as well by the name of *David Dresser* as *David D. Dresser*, and the jury so found. It appeared in evidence, that the defendant, until a short time prior to the trial, resided in the town of Stetson, where also resided his father and mother.

The presiding Judge, after stating to the jury that the question for them to decide was whether the defendant was known as well by the one name as the other, gave them the following illustration, viz.: — "If a stranger should go into Stetson, where the defendant is known, and should inquire for the house of *David Dresser*, would those of whom he inquired recognize the man inquired for as well by *that* name as by the name of *David D. Dresser*. If so, the issue is made out for the government." To this illustration an exception is taken.

The issue was not whether the defendant was as *well known* by the one name as the other, for in such case the evidence should leave the scales, in which the two names were placed, *in equilibrio*; but the true issue was whether he was known by one name as well as by the other, in which issue an equipoise is not required; for it is enough if he be known by both names. Thus, to say of a person, he is virtuous as well as happy, by no means implies, that he possesses both attributes in equal degree. The illustration was

proper in elucidating that distinction, and therefore unexceptionable.

The next stage in the progress of the trial was a general demurrer to the indictment; whereupon the defendant's counsel contended that the jurisdiction at *Nisi Prius* was terminated until the question of law should be settled by the Court sitting in *banc;* but the Judge, being otherwise impressed, overruled the demurrer, awarded a *respondeas ouster*, and ordered the case to proceed, which, on the general issue, resulted in a verdict of guilty.   To which ruling a further exception is taken.

Upon this point it is contended, (or has been in another case,) that even at common law a demurrer to an indictment terminated all further proceedings in inferior, and transferred them into the superior court, — that, by a certain process, called a writ of *certiorari*, upon the happening of such an event, all the inferior courts of England from time immemorial have been ousted of their jurisdiction and the cases were carried directly up to the King's Bench.   If such be their practice, it would seem that unscrupulous counsel might soon furnish that court with business sufficient to enable young criminals to become quite aged before their cases could be reached on the criminal calendar.   But the common law is susceptible of no such reproach.   By its provisions, criminal trials were carried up to the King's Bench, neither by an appeal, exceptions nor demurrer, but by a writ of error after judgment, or by *certiorari* at any time during the progress of the trial, without regard to the state of the pleadings.   *Certiorari*, however, was not a writ of right, but only of discretion.

"It is, therefore, in the case of applications, on the part of the *defendant*, that the Court are most frequently called upon to exercise that discretion, with which, in all cases, except where the crown itself is concerned, they are invested. And, in the exercise of this discretion, they seldom grant the writ of *certiorari* at the request of the defendant, when the offence charged against him is serious, and particularly

affecting the public. Thus they generally refuse to remove an indictment for forgery, or any heinous misdemeanor, because the delay tends to discourage, if not wholly to defeat the prosecution. So they are still more reluctant to grant these applications without the assent of the prosecutor, when they are made to remove proceedings before justices of assize or jail delivery, or from the Old Bailey, or from the Middlesex sessions, or any other court where any of the judges preside." 1 Chitty's Crim. Law, 309 ; and numerous common law cases there cited.

But in this State the common law has been so far changed as to allow exceptions by the prisoner to any rulings, or decisions of the presiding Judge in matters of law, as of *right*, and not of discretion. He, therefore, is not obliged to resort to the common law process of *certiorari*, which we have seen was granted only at discretion. See statute of 1860, c. 133, § 1, where it is provided that even in a capital trial one Judge of the Supreme Judicial Court may preside, and the only provision for bringing questions of law before the law court is upon his " rulings or decisions." A demurrer, therefore, without a ruling or decision of the presiding Judge, would give the law court no jurisdiction. Are minor offenders, whose lives are not put in jeopardy, to be more highly favored, if it be a favor to delay their trials for an indefinite period of time. A motion to quash, in arrest, and a demurrer, present the same identical questions, and yet it is contended that, although the presiding Judge may rule upon the two former, still he is prohibited from ruling upon the latter, because it alone presents a question of law. Such cannot be the logical conclusion, if it be the legal one ; and, if the latter, it must be by force of some statute. No statute can be cited which authorizes the transfer of an indictment from an inferior to the superior court, simply by force of a demurrer, which only implies, according to its common law definition, that the party filing it will " *wait*" the judgment of the presiding Judge, whether he is bound to answer.

Thus, § 21, c. 97, of the Revision of 1840, defining the jurisdiction of District Courts, provides that, — " Any person *convicted* of an offence, (in that Court,) may allege exceptions to any opinion, direction or judgment of said Court, which shall be allowed and signed by the presiding Judge," &c. That section alone gave jurisdiction in criminal cases, cognizable by that to this Court, not by an appeal or demurrer, but only on exceptions after conviction.

Then, in the Revision of 1857, (after the District Court was abolished,) § 3 of c. 77 provides, that this Court has " the jurisdiction, civil, criminal and appellate, of the former District Court, *and may exercise it as that Court was authorized to do*, or as the law prescribes." And it has been shown, that that Court was authorized to adjudicate upon demurrers. It is idle to contend that the Legislature did not intend to confer as much power on a Judge of the Supreme Judicial Court as they formerly had upon a Judge of the inferior court.

But much stress is laid on § 17 of the last cited statute, which enacts, — " That the following cases only come before the court as a court of law ; cases in which there are motions for new trials upon evidence reported by the Judge ; questions of law arising on reports of cases ; bills of exceptions ; agreed statements of facts ; cases, civil or criminal, presenting a question of law ; cases in equity, presented to demurrer to the bill, or when prepared for a final hearing," &c. It is urged that " *cases, civil or criminal*," would embrace a demurrer.; but why a demurrer more than motions to quash, or in arrest, or any preliminary questions of law, which naturally arise before judgment or sentence ? But the same Revision, c. 82, § 19, expressly prohibits a civil suit from being so removed, for, while it authorizes either party to demur in any stage of the proceedings, it at the same time requires the Judge to rule on it, subject to exceptions. *Stevens* v. *Webster*, 45 Maine, 615. Still, cases, civil and criminal, are placed in the same catagory ; both must present a question of law ; if exceptions in a civil suit, to the

State *v.* Dresser.

ruling on a demurrer, present a question of law, how can exceptions to a demurrer in a criminal suit fail to do the same?

In § 17, a demurrer is but once named, and that only in connection with bills in equity. *Expressio unius est exclusio alterius. Again*, mark the expression, —"cases, civil or criminal, presenting a question of law." The mode of presentation as to civil cases has already been adverted to. Section 27 of c. 77 refers to the same subject matter, and provides that, "when the Court is held by one Justice, a party aggrieved by any of his opinions, directions, or judgments in any civil or criminal proceeding, may, during the term, present written exceptions," &c. A criminal proceeding manifestly includes every step in the trial from the arraignment to the judgment; after which, and before sentence, the accused can have his exceptions to all errors in the rulings, if presented before the final adjournment. Section 28 refers to a dilatory plea in a civil suit for the purpose of authorizing the Judge to impose terms, and has no relation to the prior section so far as a criminal proceeding is concerned.

Any other construction might militate with that provision in the declaration of rights, which provides that the accused shall have "a speedy, public and impartial trial." Demurrers are reciprocal, and if they *per se* postpone all proceeding, while the guilty might avoid a speedy conviction, the innocent could not obtain a speedy deliverance.

But § 26, c. 134, of the Revision of 1857, would seem to settle the question. It enacts that,—"A question of law allowable by exceptions may be reserved on a report signed by such Justice; and, in such case, and when exceptions are allowed, he shall require the defendant to recognize with sufficient sureties to appear at the next term of said Court, and abide the final judgment in the case, and commit him if he does not so recognize," &c.

That section fully recognizes and provides the only mode by which criminal cases may be brought before the full

State *v.* Dresser.

bench, viz.; on a question of law allowable by *exceptions.* If a demurrer could be carried up without exceptions, then the Judge at *Nisi Prius* would have no authority to require such recognizance. The defendant would only have to demur and then bid defiance to the officers of the law.

It now remains to be considered what the practice has been in this Court at *Nisi Prius* since its present organization, in 1852, so far as criminal cases have been reported, and embraced in volumes from 34 to 51,—some one hundred cases, more or less, all of which have come up either on exceptions to the rulings of the Judge to the jury, or to his rulings on motions in arrest of judgment, with the exception of the following cases :—*State sci. fac.* v. *Hartwell,* 35 Maine, 130; *State sci. fac.* v. *Brown,* 41 Maine, 535; *State, in a plea of debt,* v. *Boies,* 41 Maine, 344, were actions brought on recognizances and transferred on demurrer. These were civil suits, and were so transferred in violation of c. 82, § 19, before cited, which probably escaped the attention both of Court and counsel.

*State* v. *Hanson,* 39 Maine, 337; *State* v. *Estes,* 46 Maine, 150, and *State* v. *Witham,* 47 Maine, 165, were severally transferred on demurrer, and are the only cases so transferred to be found in our Reports during the period before stated.

*Whereas,* in *State* v. *Merrill,* 37 Maine, 330, (in 1853,) SHEPLEY, C. J., overruled the demurrer, and the case went up on exceptions. *State* v. *Moran,* 40 Maine, 129, was submitted from *Nisi Prius* to the full Court on a report,—judgment to be either a *nolle prossequi* or a remand to the criminal term for trial. In the opinion, RICE, J., gave the parties a mild reproof for not bringing the case regularly before the Court, yet a question of law was presented, but not legally presented.

*State* v. *Elden,* 41 Maine, 165, came up on exceptions to the ruling on the demurrer to the defendant's plea in bar. In this case, decided in 1856, TENNEY, C. J., in his opinion, expressed a doubt (less than a *dictum*) whether the Judge at

*Nisi Prius* was called upon to rule on the sufficiency or insufficiency of the defendant's plea, citing R. S. of 1840, c. 96, § 22, omitting to notice the preceding sections 17 and 18 of that Act.

But, in 1859, in the celebrated case of *State* v. *Noyes*, 47 Maine, 189, the same learned Judge ruled upon the demurrer, and exceptions were taken.

So, in 1860, in *State* v. *Pillsbury*, 47 Maine, 449, exceptions were taken to a judgment overruling a demurrer.

So, in 1861, in *State* v. *Baker*, 50 Maine, 46, and likewise in *State* v. *Plummer*, 50 Maine, 217, which is the last case reported touching this subject.

Our investigation leads to this result : — when the accused demurs to the indictment, it is the duty of the presiding Judge to rule upon the demurrer. If the indictment is adjudged bad, the prisoner will be at once discharged, for the State cannot except. If the indictment is adjudged good, the prisoner may except. If his exceptions are sustained, judgment will be rendered in his favor. If the exceptions are overruled, or if no exceptions are taken, judgment will be rendered for the State, unless at the time of demurring, the prisoner has, with the consent of the prosecuting officer, reserved the right to plead anew. And in these respects there is no distinction between felonies and misdemeanors.

In this case the presiding Judge permitted the prisoner to plead anew without such reservation. This was a favor to which he was not legally entitled. But, being a ruling in the prisoner's favor, he cannot except. It gives him two chances of escape, when by law he was entitled to but one.

*Exceptions overruled.* — *Judgment for the State.*

KENT, WALTON, DICKERSON, BARROWS and DANFORTH, JJ., concurred.

APPLETON, C. J. — The prisoner demurred to the indictment. A demurrer admits the facts duly set forth therein. The general rule is, that judgment may be rendered upon

demurrer as upon confession. Referring to a demurrer to an indictment, ALDERSON, B., in *Regina* v. *Faderman*, 4 Cox, C. C., 359, remarks as follows :— " On full investigation, I have no doubt that the judgment must be final. It appears to me clear enough, that any plea in confession and avoidance of a felony, if decided against a prisoner, subjects him at once to all the consequences of a confession. This is according to every rule and principle of pleading." And why should it not be so? The demurrer admits every fact duly set forth. If the indictment be true, why should not the party admitting its truth suffer the penalty imposed by law upon the commission of the acts admitted. Any other rule would tend. to defeat the administration of justice.

"It has been settled, in misdemeanors, that, if the defendant demur to the indictment," remarks HOWARD, J., in *State* v. *Merrill*, 37 Maine, 330, "and fail on argument, the decision will operate as a conviction." This is unquestionably sound law ; but the learned Judge proceeds to intimate that, in cases of felony, the law is held otherwise. It may be that English decisions may be found looking in that direction, but the latest and best considered cases make no distinction in the consequences resulting from a demurrer between indictments for misdemeanors and for felonies. In a recent case, the English Judges held, that, where there was a general demurrer to an indictment for a transportable felony, and it was overruled, final judgment must pass ; inasmuch as, by a general demurrer, the prisoner confesses all the material facts charged against him in the indictment; though, in the case of a demurrer of a special nature, which is usually called a demurrer in abatement, it might be othwise." *Regina* v. *Faderman*, 1 Den., C. C., 468 ; 1 Bishop on Criminal Proceedings, § 458 ; 1 Bennett & Heard's Crim. Cases, 333, n. No distinction on principle can be perceived between a demurrer to an indictment for a misdemeanor and for a felony. Whatever the demurrer admits in one case, it equally admits in the other. Whatever consequences flow from a demurrer in the one case, equally follow in the other.

When there is a demurrer and joinder at *Nisi Prius*, the Justice presiding should rule thereon. His adjudication is conclusive and the cause is ended unless the defendant excepts. If, upon exception to a ruling at *Nisi Prius*, the indictment is adjudged good, final judgment is to be rendered, unless in a capital case, when *in favorem vitae* the Court may, as in civil suits, *in its discretion* allow the prisoner to plead anew. But such allowance is not a matter of right. The defendant in any cause, may, in his demurrer, reserve the right to replead, and, if the prosecuting officer assents to such reservation, a repleader will be allowed.

When the object of a demurrer is to ascertain the true construction of a penal statute, or to determine the validity of an indictment, and thus save the expenses of a jury trial, and the reservation has the assent of the prosecuting officer, or there is any other good and sufficient cause shown, the Court may, in criminal, equally as in civil causes, *in its discretion,* allow a defendant to plead anew. But as the defendant can by motion to quash, or in arrest of judgment, obtain all his legal rights, if he demurs for the mere purpose of delay, he cannot complain if judgment is rendered against him upon his own admissions deliberately made, and with a full knowledge of the legal consequences following such admissions. Every criminal would demur, trusting to accident and time for the loss of testimony then existing and forthcoming for his conviction, if he were entitled as a matter of right to a trial by jury, after his demurrer upon solemn argument has been decided against him. The law does not sanction a practice so calculated to defeat the ends of justice.

In the case before us, the defendant demurred. The case should have ended here by a ruling upon the indictment by the presiding Judge. If there was an acquiescence in such ruling, judgment would follow. If the defendant wished to carry the cause to the full Court, it should have been by exceptions, and if those were overruled, there would be judgment for the State. But the cause proceeded to trial.

Judgment on the demurrer should have been against the defendant. The verdict of the jury, upon a full hearing of all the evidence, established the defendant's guilt. The defendant,—guilty by his own admissions deliberately made,—guilty by the verdict of a jury,—has no ground of complaint. That his guilt is thus made doubly certain can afford no reasonable ground for disturbing a verdict; when no just cause of exception can be found in the rulings of the presiding Judge at the trial. The verdict of the jury left him in the same condition as the demurrer.

*Exceptions overruled.—Judgment for the State.*