## STATE *vs.* LEO A. NADEAU.

MAY 21, 1954.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

FLYNN, C. J. This indictment in substance charged the defendant with unlawfully and corruptly attempting to obtain from another person a gift as an inducement to secure for the latter an appointment to the police force of the city of Woonsocket in this state in violation of general laws 1938, chapter 612, §21. In the superior court, after the defendant's plea in abatement and his motion to dismiss were overruled, the case was tried to a jury and resulted in a verdict of guilty as charged. Thereafter the trial justice denied the

defendant's motion for a new trial and the case is here on his bill of exceptions to that decision and to certain other rulings made before and during the trial.

The following among other facts appear in the undisputed evidence. At all times referred to in the indictment the defendant Leo A. Nadeau was a duly elected councilman from the fifth ward in the city of Woonsocket. Robert A. Gallant, the complaining witness, was a candidate for appointment to the police force of said city. All such appointments were entirely within the power and control of the board of police commissioners, hereinafter called the board, which comprised the mayor and two other elected members.

On January 20, 1951 twenty-one candidates, including the complaining witness, took the written examination and on January 27 Gallant was examined physically by the police surgeon. The reports of both examinations were then evaluated by the chief of police, who reported his recommendations to the board as to all the applicants who took the examinations. Gallant received a rating of 59, was twentieth on the list, was not recommended by the chief of police, and was not appointed.

On the vital question of defendant's attempt to obtain money from the complaining witness as charged in the indictment, the evidence is conflicting. The state relied solely on the complaining witness who testified to the effect that on February 10, 1951 he received a telephone message initiated by defendant to meet the latter at the pumping station where he worked; that neither had known the other personally; and that after mutual identifications they went from the boiler room to a small office. The defendant, according to Gallant's testimony, closed the door and asked if he were still interested in getting a job on the police force. When Gallant answered affirmatively defendant said: "I will put your name in for the next meeting," and then stated: "There's reasons—there's reasons * * * if you want

to get on." When asked what the reasons were defendant said "Twelve hundred dollars * * * if you want to get on."

Gallant further testified that he was told to bring the $1,200 to defendant at the pumping station as soon as he decided. After returning home to talk it over with his wife, Gallant telephoned defendant about 12:30 p.m. at the pumping station as follows: "I told him to forget about it; that I couldn't afford to pay for the job." At that time defendant told Gallant in effect to forget the matter and leave it where it was.

The defendant on the other hand categorically denied that he had asked for or talked about "reasons" or money, or delivery thereof, as testified by Gallant. He admitted the latter's visit and telephone calls, but explained that the incident was initiated by another councilman, admittedly a friend of Gallant, who had previously spoken to defendant about helping to get a police appointment for Gallant. According to defendant the visit and telephone calls were not made on February 10, because he was sick for the first two weeks in February, and that it probably was earlier, that is, during the time he, defendant, was being briefed about the job he was to begin the first Monday of February.

The defendant further explained that they went to a small office, away from the noise of the boiler room, so they could hear each other and that he had promised he would do what he could to help Gallant and would talk to some of the members of the board after he finished work at three o'clock. However, Gallant telephoned back about 12:30 p.m. to the effect that he was no longer interested in getting on the police force. Consequently defendant never spoke to any person about it, nor did he attempt to do anything to further or to reject the application of Gallant. Apparently at that time neither defendant nor Gallant knew whether the chief of police had recommended or rejected the latter's application.

Under his motion for a directed verdict, defendant argues in substance that the evidence showed at best a mere solicitation; that neither "solicitation" nor an "attempt to receive" a bribe was mentioned in the statute and therefore was intentionally omitted; that in any event solicitation at common law was related to a felony whereas violation of the statute here is only a misdemeanor; and that if the act is considered as an attempt to commit a crime, there was no proof of a bribe or willingness on the part of the complaining witness to pay a bribe and no overt act pursuant to such a willingness or agreement. In support of these contentions defendant strongly relies on *State* v. *Bowles,* 70 Kan. 821, *State* v. *Campbell,* 70 Kan. 900, and *People* v. *Weitzel,* 201 Cal. 116, as holding that the mere offer or solicitation of a bribe would not be sufficient to prove an offense under an alleged similar statute.

We do not agree with these contentions. The pertinent part of the indictment charged that defendant "did unlawfully and corruptly attempt to obtain from one Robert Gallant for himself or for others, a gift or valuable consideration as an inducement or reward for showing favor to said Robert Gallant in relation to the business of the City of Woonsocket, a municipal corporation, in the County of Providence, in said State of Rhode Island, he, the said Leo A. Nadeau, then being a public official of said city. Against the form of the statute in such case made and provided, and against the peace and dignity of the state." Whatever the case may be at common law or elsewhere, the crime here charged was an alleged violation of G. L. 1938, chap. 612, §21. That section, entitled "Offenses Against Public Policy" was first enacted as public laws 1905, chap. 1219, and reads in part as follows: "No * * * public official shall corruptly accept, or obtain or agree to accept, or attempt to obtain * * * any gift or valuable consideration as an inducement or reward for doing or forbearing to do * * * any act in relation to the business of his principal, master, employer, or state,

city, or town of which he is an official, or for showing or forbearing to show favor or disfavor to any person in relation to the business of his principal, master, employer, or state, city or town of which he is an official."

Prior to 1905, provisions of this kind were apparently directed to offenses against public justice which involved only official acts of the judicial department. See G. L. 1896, chap. 276, secs. 4 and 5. The addition of the pertinent sections, now G. L. 1938, chap. 612, §§21 and 22, show a clear intent to extend such crimes to include violations involving acts in the executive and legislative departments. Moreover it specifically makes it a crime to "attempt to obtain * * * any gift or valuable consideration as an inducement or reward for doing or forbearing to do * * * any act * * * or for showing or forbearing to show favor or disfavor to any person in relation to the business of his principal, master, employer, or state, city or town of which he is an official."

The language of the statute is plain and comprehensive, at least in that respect. Generally speaking, §21 obviously deals with the receiving, or agreeing to accept, or attempting to obtain a bribe from another. In the absence of any indication to the contrary the words "attempt to obtain" are used in their ordinary meaning. In their context they clearly contemplate an attempt to procure or get possession of a reward for doing or forbearing to do a certain thing. In practical effect, therefore, defendant's argument that the mere omission of the technical expressions "attempt to receive" or "solicitation" is not helpful to him here, since the ordinary meaning of the language of the statute is ample and is controlling.

Nor do the Kansas and California cases cited by defendant help him in the instant circumstances. In those cases the statutes were not the same as here. In Kansas, for many years after the repeal of a pertinent statute, it was no longer a crime for an official to accept, to receive, or to solicit a bribe. Later, a law was enacted in 1895 making it a crime

for anyone to "accept or receive any money * * * under any agreement or understanding that his vote, opinion, judgment or action shall be thereby influenced * * * in any matter before him in his official capacity * * *." Apparently Kansas depended on code and did not have the background of crimes as at common law. In the circumstances the failure to include "solicitation" in the prohibited actions was held to be intentional and led the court to the conclusion that a mere solicitation by an official without an *understanding* or *agreement* was not to be considered a crime under that statute.

In the California case an early statute made it an offense for certain public officials to receive or offer to receive a bribe. However, that was amended by a later enactment whereby it was made a punishable offense only for such a public official "who receives or agrees to receive a bribe * * *." Naturally under that amended statute, which substituted the words "agrees to receive" for a mere "offer to receive," it was necessary to show a willingness to accept defendant's offer. Our statute is not so worded or limited.

However, we are of the opinion that from another viewpoint a proper interpretation of the statute required the trial justice to grant defendant's motion for a directed verdict. The statute makes it a crime to "attempt to obtain * * * any gift or valuable consideration as an inducement or reward for doing or forbearing to do * * * any act * * * or for showing or forbearing to show favor or disfavor to any person in relation to the business of his principal, master, employer, or state, city or town of which he is an official." In our judgment it was never intended thereby to extend this crime to include acts which were wholly beyond the power of the official to control and beyond his right or duty to participate in *officially*.

In other words, §21 requires an attempt to obtain a consideration or reward "for doing or forbearing to do * * * any act," or "for showing or forbearing to show favor or dis-

favor" in certain relationships. The above correlatives by themselves tend to show that the prohibited action was intended to relate to *official* acts. The idea of *forbearance* itself suggests the existence of a right or duty to act otherwise in such official capacity. It also presupposes a capacity in the accused to show favor or disfavor in relation to the subject matter. To make this still clearer the statute then goes on to restrict such performance or forbearance to an act "in relation to the business of his principal, master, employer, or state, city or town of which he is an official." Here the act of the official in his relationship to the city is placed in the same category with that of an agent to his principal, a servant to his master, or an employee to his employer. Such language and context strongly indicate an intention to include only acts which normally would be performed within the scope of certain employments, and in the case of an official within his duties or power to control, or at least within his right to participate *officially* in the business of his principal, in this case the city.

But the only act which defendant officially could do or forbear to do, and the only favor or disfavor he could show, in relation to the business of the city, would have to be something which came before him in his capacity as a member of the council. If the general assembly had intended to make illegal all the acts of a person, even though wholly outside the scope of his official powers, duties and rights, it seems that such intent would have been clearly stated. At least the legislature would not have used, as here, language that clearly by its context restricts the prohibited actions to those performed by a servant in relation to his official capacity with the city.

Since this is a penal statute, we should construe it strictly and not attempt to read into it provisions which are not reasonably necessary to effectuate its express purpose. Moreover words should be given their ordinary meaning unless a contrary intent appears. *State* v. *Patriarca*, 71 R. I. 151.

In the instant case it is possible to give reasonable effect to the statute within its express language. Our interpretation thereof is in keeping with the great weight of authority which recognizes, generally speaking and subject to particular statutory provisions, that the gist of such an offense is the tendency to pervert a public office which should be officially discharged in the interest of justice and the common good. *People* v. *Jackson,* 191 N. Y. 293; *People* v. *Peters,* 265 Ill. 122; *State* v. *Sullivan,* 110 Mo. App. 75. 8 Am. Jur., Bribery, §§10 to 14, pp. 890 to 894.

According to the undisputed evidence, the power of appointment to the police force was lodged solely in a board of police commissioners, all the members of which were elected officials. The evaluation of the qualifications of applicants and the recommendations for their acceptance or rejection were made entirely by the chief of police to the board and not to the council or any committee thereof. It is not denied that the council had no power and no part in evaluating, recommending or rejecting such applications, and that defendant as councilman had no vote in approving or disapproving any recommendation by the chief of police or any appointment made by the board. If the official rights and duties of the council or defendant as to such applicants were in fact otherwise, the state introduced no evidence to prove it. In other words, the essential act or showing of favor which was to be performed as the object or consideration for the alleged attempt to obtain money was something which was not within the function of the council and was entirely outside the scope of defendant's rights, powers, and duties in his official capacity.

Some effort was made by the state to show that defendant was a member of the police committee of the city council. But defendant's uncontradicted testimony is that such committee had never met to transact business since its first and last meeting on January 1, 1951, had no official duties or

actions whatever in connection with recommending, rejecting or making appointments to the police department, and had never participated in the preparation of the board's budget. Consequently there is not a scintilla of evidence to show that defendant as councilman had promised to do an act or to show a favor that was within his official power or capacity to fulfill or even in which he officially had a right or duty to participate or vote. In our judgment the evidence considered most favorably to the state leads to only one reasonable conclusion, namely, that it falls short of proof beyond a reasonable doubt of the charges in the indictment under the statute as we construe its intendment.

The trial justice seems to have appreciated this meaning of the law in making certain rulings during the trial as to relevant and material evidence. But apparently he overlooked it at the time he was passing on the motion for a directed verdict, perhaps because defendant was so greatly stressing the interpretation of the statute as suggested by certain language from the Kansas and California cases and cases under the common law. The defendant's eighth exception to the denial of such motion is therefore sustained and in view of this conclusion we need not consider his other exceptions.

The defendant's eighth exception is sustained, and the case is remitted to the superior court for entry of a judgment of not guilty.

*William E. Powers,* Atty. Gen., *Alfred E. Motta,* Special Counsel, for State.

*Joseph Mainelli,* for defendant.