STATE OF MAINE
*vs.*
LOUIS JALBERT

Androscoggin.    Opinion, November 26, 1965.

*David R. Hastings, Special Asst. Attorney General,*
*Laurier T. Raymond, Jr., County Attorney*

   *for Androscoggin County,* for Plaintiff.

*George M. Carlton, Jr.,* for Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, MARDEN, RUDMAN, JJ. SULLIVAN, J., sat at argument but retired before the opinion was adopted.

TAPLEY, J. On exceptions. The defendant was indicted by the Grand Jury at the September Term, 1964 of the Superior Court, within and for the County of Androscoggin. The indictment contains two counts, one charging the crime of conspiracy to bribe, and the other for cheating by false pretenses. Defendant filed a general demurrer to the indictment without requesting or being granted the right to plead over. The presiding justice, after due consideration, found the indictment sufficient, overruled the demurrer, ordered judgment for the State and continued the case for sentence. The defendant seasonably filed exceptions to the overruling of the demurrer and the case is now before us on these exceptions.

Defendant's contentions, as expressed in his brief, are in manner and form as follows:

> "1. Does a general demurrer test every aspect of the indictment?
>
> 2. Must an indictment for conspiracy specifically set forth and allege that two or more persons did conspire and agree *together* as is contained in the language of the statute?
>
> 3. Must an indictment for conspiracy contain an allegation indicating a mutuality of intent of the co-conspirator and mutuality of agreement to do an unlawful act?

4. Is an indictment charging conspiracy sufficient when the alleged bribery is by the language of the indictment dependent upon a future contingency which also by the language of the indictment is pure speculation?

5. Is it sufficient that an indictment for conspiracy to commit the crime of bribery merely set forth 'a gratuity and valuable consideration' without further specifying what the gratuity or valuable consideration is?

6. Is an indictment for cheating by false pretenses sufficient when it fails to:

    a.   set forth that the subject matter of the false pretense is an existing fact?

    b.   set forth what the act 'worked hard' specifically consists of as a false pretense?

    c.   specifically negate the truth of the pretense alleged?

    d.   set forth that there was such a relationship between the respondent and the one alleged to have been deceived that would permit the one deceived to in some way rely upon the representation of the respondent?

7. Is an indictment sufficient as a matter of law when the several counts therein contain allegations so completely inconsistent as to preclude the possibility of a proper consideration by the Grand Jury?".

The indictment under attack reads:

"AT THE SUPERIOR COURT, begun and holden at Auburn, within and for the County of Androscoggin, on the first Tuesday of September in the year of our Lord one thousand nine hundred and sixty-four.

"THE JURORS FOR SAID STATE upon their oath present that Louis Jalbert, of the City of Lewiston, in said County of Androscoggin and State of Maine, on the second day of February, in the year of our Lord, one thousand nine hundred and sixty-three, at said Lewston, feloniously did conspire and agree with one Joseph A. P. St. Pierre, otherwise called Paul St. Pierre, with fraudulent and malicious intent, wrongfully and wickedly to commit a crime punishable by imprisonment in the state prison, to wit: the crime of bribery, by the said Louis Jalbert then and there feloniously conspiring and agreeing with said Joseph A. P. St. Pierre, with said fraudulent and malicious intent, feloniously and corruptly to offer, promise and give to one Harris M. Isaacson a gratuity and valuable consideration, and by the said Louis Jalbert then and there feloniously conspiring and agreeing with said Joseph A. P. St. Pierre, with said fraudulent and malicious intent, feloniously and corruptly to offer to do, promise to do and do certain acts beneficial to said Harris M. Isaacson, the said Harris M. Isaacson being then and there, to the knowledge of said Louis Jalbert and said Joseph A. P. St, Pierre, a judicial officer, to wit: the duly appointed and qualified Associate Judge of the Municipal Court for said City of Lewiston, said gratuity and valuable consideration to be offered, promised and given, as aforesaid, and said beneficial acts to be offered, promised and done, with the felonious and corrupt intent to influence the action, vote, opinion and judgment of said Harris M. Isaacson in a certain matter that might come legally before him in his said official capacity as Associate Judge, to-wit; the criminal prosecution in said Municipal Court of one Leo J. St. Pierre, the said Leo J. St. Pierre being then and there, to the knowledge of said Louis Jalbert and said Joseph A. P. St. Pierre, under investigation as a suspected larcenist by officers of the police department of said City of Lewiston in connection with certain larcenies supposed to have

been committed within said City of Lewiston during the year last past, against the peace of said State, and contrary to the form of the statute in such case made and provided.

"And the jurors aforesaid, upon their oath aforesaid, do further present that Louis Jalbert, of the City of Lewiston, in said County of Androscoggin, and State of Maine, on the second day of February, in the year of our Lord, one thousand nine hundred and sixty-three, at said Lewiston, feloniously, designedly and with intent to defraud, did falsely pretend to one Joseph A. P. St. Pierre, otherwise called Paul St. Pierre, for the purpose of inducing the said Joseph A. P. St. Pierre to pay a certain sum of money, to-wit: the sum of two hundred dollars, to him, the said Louis Jalbert, that he, the said Louis Jalbert, had then and there worked hard to fix the case against Leo St. Pierre with Judge Isaacson (meaning that he, the said Louis Jalbert, had worked hard to make an arrangement, and had arranged, with one Harris M. Isaacson, the said Harris M. Isaacson then and there being, to the knowledge of said Louis Jalbert and said Joseph A. P. St. Pierre, the duly appointed and qualified Associate Judge of the Municipal Court for said City of Lewiston, to have certain criminal investigations then and there being conducted by officers of the police department of said City of Lewiston, involving as a suspected larcenist one Leo J. St. Pierre, father of said Joseph A. P. St. Pierre, in connection with certain larcenies supposed to have been committed within said City of Lewiston during the year last past, disposed of without any formal complaint against and without any criminal prosecution of the said Leo J. St. Pierre) and moreover, the said Louis Jalbert then and there feloniously, designedly and with intent to defraud, for the purpose aforesaid, did falsely pretend to said Joseph A. P. St. Pierre that he, the said Louis Jalbert, had to have two hundred dollars to buy a set of golf clubs for Judge Isaacson (meaning that he, the said Louis Jalbert, by reason of said arrangement to

dispose of said criminal investigations, as aforesaid, was under obligation to buy and give to said Harris M. Isaacson a set of golf clubs, of the value of two hundred dollars) whereas in truth and in fact the said Louis Jalbert had not arranged with said Harris M. Isaacson to dispose of said criminal investigations as aforesaid, and was under no obligation by reason of any such arrangement to give to said Harris M. Isaacson any valuable consideration whatsoever, all of which the said Louis Jalbert then and there well knew, which said false pretenses were believed to be true and were relied upon by the said Joseph A. P. St. Pierre, and he was thereby deceived and induced to pay over and deliver and did then and there pay over and deliver to the said Louis Jalbert, and the said Louis Jalbert thereby and solely by means of said false pretenses did then and there feloniously, designedly and with intent to defraud obtain from the said Joseph A. P. St. Pierre, the said sum of money, to-wit: divers national bank bills, treasury notes and certificates of the aggregate value and amount of one hundred dollars, current as money in the United States of America, a more particular description of which is to said jurors unknown, and one good and available bank check and order dated February 2, 1963, drawn by said Joseph A. P. St. Pierre, under his name of Paul St. Pierre, on the First-Manufacturers National Bank of Lewiston and Auburn, a corporation duly existing by law, of the amount and value of one hundred dollars, payable to the order of said Louis Jalbert, all of the aggregate value and amount of two hundred dollars and all of the property of said Joseph A. P. St. Pierre,

against the peace of said State, and contrary to the form of the statute in such case made and provided."

## COUNT CHARGING CONSPIRACY

This count charged the defendant with feloniously conspiring and agreeing with one Joseph A. P. St. Pierre,

fraudulently, with malicious intent, wrongfully and wickedly to commit a crime punishable by imprisonment in the State Prison, the crime being bribery. The defendant and Joseph A. P. St. Pierre, with fraudulent and malicious intent, agreed to offer, promise and give to Harris M. Isaacson a gratuity and valuable consideration, with intent to influence the action, vote, opinion and judgment of said Harris M. Isaacson on a certain matter that might legally come before him in his official capacity as Associate Judge, the official matter being that one Leo J. St. Pierre was under investigation in connection with certain larcenies and that the result of the investigations might come legally before Harris M. Isaacson, Associate Judge, the capacity of Harris M. Isaacson as Associate Judge of the Municipal Court for the City of Lewiston being well known to both the defendant and Leo J. St. Pierre. The count charging a conspiracy to bribe in the case at bar is much like the one upon which the prosecution was based in the case of *State* v. *Papalos,* 150 Me. 370, 372, excepting that in the instant case the subject of conspiracy, to wit, the crime of bribery, is more specifically described in the indictment.

> " - - - - the gravamen of conspiracy is 'combination,' 'concerted action' and 'unlawful purpose.' "
> *State* v. *Trocchio,* 121 Me. 368, 375.

> "When the act to be accomplished is itself criminal or unlawful, it is not necessary to set out in the indictment the means by which it is to be accomplished; but, when the act is not in itself criminal or unlawful, the unlawful means by which it is to be accomplished must be distinctly set out."
> *Berger* v. *State of Maine,* 147 Me. 111, 115.

The indictment does not allege any case pending before Judge Isaacson but the bribery statute makes it a crime to illegally influence a judicial officer "in any matter pending, or *that may come legally before him in his official capacity."*

"Whoever gives, offers or promises to an executive, legislative or judicial officer, before or after he is qualified or takes his seat, any valuable consideration or gratuity whatever, or does, offers or promises to do any act beneficial to such officer, with intent to influence his action, vote, opinion or judgment in any matter pending, or that may come legally before him in his official capacity, shall be punished - - - - -."

R. S., 1954, Chap. 135, Sec. 5 (17 M.R.S.A., Sec. 601).

The language of the statute makes it clear that a judicial officer may be subject to a bribe, not only concerning pending matters but also those that may legally come before him.

"If 2 or more persons conspire and agree together, with the fraudulent or malicious intent wrongfully and wickedly - - - - - to commit a crime punishable by imprisonment in the State Prison, they are guilty of a conspiracy; - - - - -."

R. S., 1954, Chap. 130, Sec. 25 (17 M.R.S.A., Sec. 951).

Defendant argues that the conspiracy count is not valid because it fails to use the word "together" as contained in the statute. In *Moody, Petr.* v. *Warden, Maine State Prison*, 145 Me. 328, at page 334, the court said, in considering the use of statutory language in an indictment:

"In the case of *State v. Lynch*, 88 Me. 195, which was an indictment for an assault with intent to kill and murder, a statutory offense which requires a specific intent, this court laid down the rule with respect to the use of the words of the statute setting forth the elements of a statutory crime. In that case we said:

'It is also necessary that the indictment should employ "so many of the substantial words of the statute as will enable the court to see on what one it is framed; and, beyond this, it

> must use all the other words which are essential to a complete description of the offense; or, if the pleader chooses, words which are their equivalent in meaning; or, if again he chooses, words which are more than their equivalents, provided they include the full significations of the statutory words, not otherwise." Bishop on Criminal Procedure, vol. 1, Sec. 612.' "

In the instant case there were *two* men involved in the alleged conspiracy. It is obvious that in conspiring and agreeing to commit an unlawful act they must have done it together. There is no merit in the contention that because of the failure to include the word "together" in the count alleging conspiracy that it is insufficient in law.

We are of the opinion, and so find, that the count in the indictment charging conspiracy in every particular is sufficient in law.

### COUNT CHARGING CHEATING BY FALSE PRETENSES

R. S., 1954, Chap. 133, Sec. 11 (17 M.R.S.A., Sec. 601)

Counsel for defendant attacks this count on several grounds: (1) the pretense as alleged in the second count in the indictment is not capable of defrauding; (2) the count does not contain a direct and positive averment that the pretense made was in fact false; and, further, that the negation does not contest pretense relied upon that the defendant had "worked hard to fix the case against Leo St. Pierre with Judge Isaacson." There are further complaints that there were no allegations contained in the count that defendant was acquainted with Judge Isaacson; that there was any connection between the defendant and Isaacson and that there was power in the judge to halt the investigation. The State in alleging the false pretenses used this language in setting out the false pretenses:

"that he, the said Louis Jalbert, had then and there worked hard to fix the case against Leo St. Pierre with Judge Isaacson (meaning that he, the said Louis Jalbert, had worked hard to make an arrangement, and had arranged, with one Harris M. Isaacson, - - - - - - - to have certain criminal investigations then and there being conducted by officers of the police department of said City of Lewiston, involving as a suspected larcenist one Leo J. St. Pierre, father of said Joseph A. P. St. Pierre, in connection with certain larcenies supposed to have been committed within said City of Lewiston during the year last past, disposed of without any formal complaint against and without any criminal prosecution of the said Leo J. St. Pierre.)"

The count then goes on to state as a false pretense:

"that he, the said Louis Jalbert, had to have two hundred dollars to buy a set of golf clubs for Judge Isaacson (meaning that he, the said Louis Jalbert, by reason of said arrangement to dispose of said criminal investigations, as aforesaid, was under obligation to buy and give to said Harris M. Isaacson a set of golf clubs, of the value of two hundred dollars.)"

The negation is set out in the following language:

"whereas in truth and in fact the said Louis Jalbert had not arranged with said Harris M. Isaacson to dispose of said criminal investigations *as aforesaid* and was under no obligation by reason of any such arrangement to give to said Harris M. Isaacson any valuable consideration whatsoever, - - - -." (Emphasis supplied.)

In *State* v. *Binette,* 159 Me. 231, the court considered, on demurrer, the sufficiency of an indictment charging the crime of cheating by false pretenses. The indictment, in part, alleged that the defendant,

"had, through the color of his office, been one of the persons *who had worked very hard* to get the new Biddeford High School project started, and that he would like to have something to compensate him for the work that he and others had done - - - -." (Emphasis supplied.)

In considering this language the court said on *page 233:*

"This language partakes more of innuendo than direct allegation, but in any event too many questions remain unanswered. What was meant by 'work' as used in this context? Is the 'work' referred to the same 'work' previously described as being involved in getting the project started? If so, there is no denial that some such 'work' was done. In the opinion of the speaker, efforts to get the project started initially might ultimately have accrued to the benefit of the complainant since he did obtain a contract. The word 'work' itself in this context, otherwise undefined, is more an expression of opinion than of fact."

In the count charging cheating by false pretenses the Grand Jury left no uncertainty as to what it meant in alleging that " - - - - Louis Jalbert, had then and there worked hard to fix the case against Leo St. Pierre with Judge Isaacson" when it set out in detail that Jalbert had worked hard to make an arrangement and made the arrangement with Judge Isaacson to dispose of any formal complaint and any criminal prosecution against Leo J. St Pierre. The Grand Jury also alleged that Jalbert falsely pretended to Joseph A. P. St. Pierre that he, Jalbert, "had to have two hundred dollars to buy a set of golf clubs for Judge Isaacson" and to clarify this allegation the Grand Jury set out in detail that Jalbert, by reason of the arrangements to dispose of the criminal investigation, was under obligation to buy and give to Judge Isaacson a set of golf clubs which would cost two hundred dollars.

In *State* v. *Deschambault,* 159 Me. 223, at 226, the court cited with approval the general rule pertaining to allega-

tions in indictments charging the crime of cheating by false pretenses.

> " 'GENERALLY. — In conformity with rules relative to indictments and informations generally, an indictment for obtaining property by false pretenses is sufficient if the language used is such that it designates the person charged and indicates to him the crime of which he is accused. An indictment is not invalidated by the fact that it charges the several acts constituting the offense to have been committed by the defendant in some particular capacity. Such an allegation may be treated as surplusage. An indictment for false pretenses must, however, have that degree of certainty and precision which will fully inform the accused of the special character of the charge against which he is called on to defend and will enable the court to determine whether the facts alleged on the face of the indictment are sufficient in the contemplation of law to constitute a crime. so that the record may stand as a protection against further prosecution for the same alleged offense.' 22 Am. Jur., False Pretenses, Sec. 90."

The count charging the defendant with the crime of cheating by false pretenses is good and sufficient in law.

When defendant, through counsel, filed a general demurrer to the indictment, which was overruled, he did not reserve the right to plead over. Without request to plead over, the presiding justice had no alternative but to order judgment for the State. *State* v. *Dresser,* 54 Me. 569; *State* v. *Cole,* 112 Me. 56; *State* v. *Rogers,* 149 Me. 32.

In addition to the rule laid down in the above cited cases, there is statutory law requiring the trial judge to impose sentence "upon conviction, either by verdict or *upon demurrer* - - - - - " (emphasis supplied) of crimes not punishable by life imprisonment.

"Sentence shall be imposed upon conviction, either by verdict or *upon demurrer*, of a crime which is not punishable by imprisonment for life. The court at the term of conviction may in its discretion continue the matter for sentence, suspend sentence or stay the execution of sentence, although exceptions are alleged. - - - - -" (emphasis supplied).

R. S., 1954, Chap. 148, Sec. 29 (15 M.R.S.A., Sec. 1701).

The entry will be:

*Exceptions overruled.*

*Judgment for the State.*