PIERCE, Chief Judge
(dissenting).
I respectfully dissent from the majority opinion.
The factual record here indicates that a labor union, namely the operating Engineers Union, owned property in Collier County on the landward side of the salinity line. The Union began to dig a lake on the property and planned to dig a canal from the lake to Henderson Creek, which would not cross the salinity line. The work was temporarily halted at the request of the County Commissioners, who then allowed the digging of the lake to continue as it appeared that the Union was conducting the work lawfully.
There was in effect a County ordinance which established a salinity line and which provided in part as follows:
“Section 3. It shall be unlawful for any person, group, corporation or other entity of any kind to make, dig or construct any canal or other excavation of any kind across and landward of the salinity line above described, which canal or excavation is connected to, extends into or is a part of any body of salt water or sea water without first obtaining a written permit to do so from the Board of County Commissioners.”
The salinity line Ordinance has never been construed nor is its construction necessary. Suffice it to say that the purpose of the ordinance obviously is to prohibit construction of a waterway across the salinity line.
The thrust of the prosecution was that appellants, defendants below, who were members of the Union, gave one of the County Commissioners $1,000.00 to influence the granting of a permit to dig a canal.
Although the majority opinion concedes that a permit was in fact not needed in order to have the canal built, some factual matters alluded to in my brother Mann’s opinion should be corrected. The majority opinion states that the Union “sought a permit, thought at the time by all parties to be required by a County ordinance which forbade crossing a ‘salinity line’ established to protect fresh water on the landward side from intrusion of salt water. Appellants Nell and Garguilo appeared at a Commission meeting where Nell asked for a permit.”
This statement implies that the appellants desired a permit because it was required by the salinity line ordinance to dig across the salinity line and that the appellants appeared at the Commission meeting to achieve this end.
A careful reading of the transcript shows otherwise.
Defendants’ Exhibit One, which contained the minutes of the Commission meeting Nell attended, discloses that on April 21, 1970, the appellants appeared at the meeting of the Board of County Commissioners and made a request to dig a canal landward to Henderson Creek.
At the trial, Commissioner Hancock read aloud from the official minutes of that meeting:
“Mr. Richard Nell and Tommy Wells of the Operating Engineers Union Local No. 675 appeared before the board requesting permission to dig in the Henderson Creek area landward of the salinity line. After due discussion, the board requested them to provide maps of the area with the proposed digging to be distributed to each board member for their perusal and to the environmental committee for their recommendations.” (Emphasis supplied).
From the record it is evident that any requests or permits were sought to dig on the landward side of the salinity line. *410 Commissioner Hancock, the very man whom appellants allegedly bribed testified that there was no request to move the salinity line and that since the canal would not cross the salinity line a permit was unnecessary.
The record therefore discloses, and the majority opinion evidently concedes, based on the testimony and the clear import of the Ordinance, that the permission sought by the appellants could not be refused even if the Commission so desired. This is because the Commissions’ acquiescence was not necessary.
The pivotal question then becomes whether our bribery statute covers all actions of a public official or rather only those actions that are within his power to decide, i.e. actions within his “official capacity”.
The crime of which the appellants are accused is purely statutory, State ex rel. Williams v. Coleman, 1938, 131 Fla. 892, 180 So. 357, and each essential element of the offense as set forth in the statute must be strictly proved, Johnson v. State ex rel. Fox, 1930, 99 Fla. 711, 127 So. 317; State ex rel. Grady v. Coleman, 1938, 133 Fla. 400, 183 So. 25; Younghans v. State, Fla.App.1957, 97 So.2d 31.
The pertinent portions of F.S. Section 838.011 F.S.A., under which defendants were charged, reads as follows:
“Any person who shall corruptly give, offer or promise to any public officer . any commission, gift, gratuity, money, property or other valuable thing . . . with the intent or purpose to influence the act, vote, opinion, decision, judgment or behavior of such public officer ... on any matter, question, cause or proceeding which may be pending or may by law be brought before him in his public capacity, or with the intent or purpose to influence any act or omission relating to any public duty of such public officer ... or with the intent or purpose to cause or induce such public officer, agent, servant or employee to use or exert or to procure the use or exertion of any influence upon or with any other public officer, agent, servant or employee in relation to any matter, question, cause or proceeding that may be pending or may by law be brought before such other public officer, agent, employee or servant, shall be guilty of the crime of bribery.” (Emphasis supplied).
The amended information • specifically tracked the offending statute with the express allegation that defendants
“ . . . did corruptly give, offer or promise to a public officer, having knowledge of said public officer’s official capacity, to-wit: A. C. Hancock, a County Commissioner of Collier County, State of Florida, the sum of $1,000.00, good and lawful money of the United States of America, with the intent or purpose to influence the act, vote, opinion, decision, judgment or behavior of A. C. Hancock, on a matter, question, cause or proceeding which may be pending before him in his official capacity as a County Commissioner, or may by law be brought before him in his public capacity as a County Commissioner, such matter, question, cause or proceeding, concerning the salinity line in Collier County . . .” (Emphasis supplied).
The elements of the crime of bribery were set forth in Azrak v. State, Fla.App. 1966, 183 So.2d 712, as follows:
“(1) knowledge on the part of the accused of the official capacity of the person to whom the bribe is offered;
(2) the offering of a thing of value, and
(3) the intent to influence the official action of the person to whom the bribe is offered.” (Emphasis supplied).
The gravamen of the offense charged in the amended information is that the defen *411 dants did corruptly give, offer or promise to County Commissioner Hancock $1,000.00 to influence Commissioner Hancock’s conduct concerning a matter, question or cause which may be pending before him in his official capacity as a County Commissioner, or may by law be brought before him in his public capacity as a County Commissioner. The proscription of the bribery statute condemns the act of one who gives, offers or promises something of value to a public officer to influence his behavior regarding a matter which may be pending before him in his official capacity, or in reference in a matter which may be brought before him in such official capacity.
Neither this Court nor any other Court should exchange its judicial wisdom for a definite legislative fact.
In Gibbs v. Mayo, Fla.1955, 81 So.2d 739, the defendant was formally charged with unlawfully breaking and entering a motor vehicle, but there was no statute in existence at that time making it a crime to break and enter a motor vehicle. In reversing the conviction the Court said:
“It has long been settled in this State that to charge one with an offense defined by statute, the offense must be charged ‘in the very language of the statute, or in language equivalent import’ and 'nothing can be taken by intendment’.” (Court’s emphasis)
This rule of law has been reiterated through a long line of decisions, and currently reaffirmed in Catanese v. State, Fla.App.1971, 251 So.2d 572.
If the subject matter of the alleged bribery is to come before a public official in his official capacity, then such act is condemned by F.S. Section 838.011 F.S.A., and is a violation of the bribery statute. In Smith v. State, Fla.App.1971, 253 So.2d 465, Smith, a city council member, was convicted on three of five informations which were consolidated for trial, charging him with soliciting and accepting a bribe to influence the defendant’s decision in the performance of his official duties on a "matter, question, cause or proceeding which might be in or which might by la1¶ be brought before him in his proper capacity . . . and would influence the act relating to one of the public duties of him .” (Court’s emphasis).
The conviction was reversed and defendant Smith ordered discharged where it appeared that the alleged bribery took place at a time when there was nothing pending before the defendant to be done by which any vote of his could be influenced.
The rationale of the Court’s decision was:
“Section 838.012, as enacted in 1955, is limited to the charges of accepting money or other things of value, which are prospective in scope of time, that money, etc. will influence the act, vote, opinion, decision, judgment or behavior of such public officer * * * in any matter, question, cause or proceeding which may be pending or may by law be brought before him in his public capacity or will influence his act or omission relating to any of his duties or will cause or induce him to use or exert or procure the use or exertion of any influence * * * with any public officer * * * in relation to any matter, question, cause or proceeding that may be pending or by law be brought before such public officer * * (Court’s emphasis),
cf. Greene v. State, Fla.1972, 263 So.2d 194.
In Raines v. State, Fla.1953, 65 So.2d 558, 560, our Supreme Court stated that prevailing rule as follows :
“The rule seems to be well settled that an officer cannot be charged and convicted of an act that is entirely outside the scope of his legal duties.”
We are constrained to disagree with the majority opinion that Raines rejected the contention that the defendant was without power to accomplish the purpose of the one *412 offering the bribe because the defendant was but one member of a three-member board, and hence was powerless to issue a license which required acquiescence of a majority. The writer of this opinion was counsel for Raines, and is acutely aware that the facts did not support the majority interpretation. On the contrary, the Supreme Court did reiterate the established rule of law, as we have cited, and went on to further say:
“This court is committed to the doctrine that any one who corruptly offers, gives, or receives anything of value to influence the receiver’s official action, is guilty of bribery.” (Citing cases) (Emphasis supplied)
In the case of Streeter v. State, 1925, 89 Fla. 400, 104 So. 858, Streeter had been charged with bribery under then Section 5346 R.G.S.1920 (basically the same as present F.S. Section 838.011 F.S.A.). The information charged him with the offense of “knowingly and corruptly attempting to bribe a duly qualified police officer of the City of Jacksonville, by offering to give to the officer a sum of money to influence him in his official capacity as such police officer in a matter which was then before him in his official capacity.” The evidence showed that the offer to bribe related to an offense which had not yet been committed, but was in contemplation only. The Court said:
“Therefore there was no matter, question, cause, or proceeding then pending concerning which the act, vote, opinion, decision, or judgment of the officer could be influenced, as was alleged in the information.” Cf. Tillman v. State, 1909, 58 Fla. 113, 50 So. 675.
The Supreme Court holdings in Street-er, Brunson and Colson, cited in the majority opinion, all subscribed to the doctrine in Florida that in order for one to be convicted under the bribery statute the matter sought to be influenced must be within the scope of an officer’s legal duties. Yet, my brother Mann proclaims he would not concur were he sitting on the Supreme Court on Streeter, Brunson or Colson. It is perhaps for this reason that the majority opinion relies instead upon three antiquated cases from other jurisdictions, exemplified by O’Brien and Jackson, ante.
It is interesting to note that of these three cases cited, one admits that there is “respectable authority in other jurisdictions tending to support the appellant’s contention.” Commonwealth v. O’Brien, 107 Pa. Super. 569, 164 A. 360 at 363.
Another case cited admits outright that the weight of authority on this question is the other way. People v. Jackson, 84 N.E. 65 at 67.
In 115 A.L.R. 1255, we find the following:
“It is a universal principle that an offense committed in connection with an act outside the official functions of the officer to whom the bribe is offered, is not bribery.”
The Supreme Court and other appellate Courts of Florida have consistently adhered to the majority view in the nation as stated in State of Washington v. London, 194 Wash. 458, 78 P.2d 548, 115 A.L.R. 1255. State v. Bowling, 1967, 5 Ariz.App.436, 427 P.2d 928; Ingram v. State, 1958, 97 Ga.App. 468, 103 S.E.2d 666; State v. Smith, 1968, 252 La. 636, 212 So.2d 410; Sugarman v. State, 1937, 173 Md. 52, 195 A. 324; State v. Jalbert, 1965, 161 Me. 505, 214 A.2d 819; State v. Adcox, 1925, 312 Mo. 55, 278 S.W. 990; State v. Greer, 1953, 238 N.C. 325, 77 S.E.2d 917; State v. Bell, 1967, 78 N.M. 317, 431 P.2d 50; State v. Nadeau, 1954, 81 R.I. 505, 105 A.2d 194; Selvidge v. State, 1934, 126 Tex.Cr.R. 489, 72 S.W.2d 1079; State v. Austin, 1965, 65 Wash.2d 916, 400 P.2d 603; State v. Good, 1967, 151 W.Va. 813, 156 S.E.2d 8; State v. Hibicke, 1953, 263 Wis. 213, 56 N.W.2d 818.
The majority opinion challenges our Supreme Court decisions and suggests that *413 the departure from the existing law be resolved by conflict certiorari. I am opposed to creating a pseudo synthetic conflict cer-tiorari primarily to induce further review by the Supreme Court, especially when that Court has already laid down definite guidelines which are sound and logical. We as a subordinate Court should follow the paths rather than seek detours.
Furthermore, as to applicability of statutory crime, there is no “gray zone.” A given act is either a violation of the statute — and clearly so — or it is not. And all doubts are resolved in favor of the person.
Suggestion is also made that the Legislature change the law if it needs to be changed. We as appellate Judges cannot enjoy the luxury of legislating, no matter how strongly we may feel so impelled, concerning the efficacy of certain laws — we must content ourselves with the interpretation of the law as it exists.
Viewing the law, therefore, as it does exist, appellants’ convictions should be reversed, the judgment and sentence vacated, and the appellants discharged.