C. H. LANGDEAU, *Liquidator for the State Board of Insurance of the State of Texas vs.* NARRAGANSETT INSURANCE COMPANY.

MARCH 12, 1962.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

Decision on reargument, dated June 19, 1962, will follow in chronological order.

CONDON, C. J.   This is a receivership proceeding in which the superior court allowed the director of business regulation of the state of Rhode Island to intervene and thereafter appointed him receiver of the respondent insurance company pursuant to G. L. 1956, chapter 14 of title 27, otherwise known as the Uniform Insurers Liquidation Act. See *Langdeau* v. *Narragansett Insurance Co.*, 91 R. I. 408, 164 A.2d 314.   The cause is here on appeals from certain decrees which were briefed and argued together in this court.

The first appeal is by the general treasurer of the state of Rhode Island from a decree of the superior court directing

him to turn over to the receiver certain bonds belonging to respondent but which were deposited with the general treasurer pursuant to G. L. 1956, §27-1-5, hereinafter set out in full in Appendix A. The second appeal is by complainant from a decree of the superior court awarding Fred Colagiovanni, Esquire, a fee of $5,000 for legal services rendered to respondent. We shall hereinafter discuss each appeal separately in the above order.

## I

The general treasurer contends that the superior court erred in directing him to turn over the bonds in question since he was expressly obligated by §27-1-8 not to deliver up securities in his custody except in accordance with the procedure prescribed therein. Section 27-1-8 is hereinafter set out in full in Appendix B. The receiver contends that §27-1-8 is inapplicable in view of the receivership. He points out that G. L. 1956, §27-14-2 (8), provides that: "Assets held in trust and assets held on deposit for the security or benefit of all policyholders * * * shall be deemed general assets." He argues further that §27-14-3 declares that "Said court shall direct said receiver forthwith to take possession of the assets of the insurer and to administer the same under the orders of the court." The court having acted as therein directed the receiver stresses that it is the paramount duty of the general treasurer to comply forthwith with the order of the court regardless of the legislative directive of §27-1-8.

Moreover, he claims that it is impossible for the general treasurer in any event to comply with such directive because there is now no "president or principal officer and secretary" of respondent to make known under oath its "desire to relinquish its business." He also claims that §27-1-8 is unworkable since it does not prescribe the means for determining the validity of any claims or, if such claims should be

proved, for satisfaction thereof by the general treasurer out of the securities in his custody. As opposed to such doubtful or ineffective procedure under §27-1-8 he stresses the fact that compliance with the order of the court will accomplish the purpose of that section by promoting a prompt administration of the receivership to the benefit of policyholders and creditors, whereas continued noncompliance will necessarily hamper and obstruct such administration to the detriment of all interested persons.

The resolution of the issue thus raised requires a close scrutiny of §§27-1-5 and 27-1-8. It is apparent from a reading of §27-1-5 that the deposit of securities with the general treasurer was intended to establish a special trust fund for the benefit of policyholders. And the procedure provided in §27-1-8 was expressly designed to prevent impairment of such fund. Compliance with that procedure is made a condition precedent to the authority of the general treasurer to "deliver up" the securities.

The establishment of a trust fund for the benefit of policyholders was intended to serve a special purpose. In summary that purpose is to enable insurance companies incorporated under the laws of this state to do business in other states which require foreign insurance companies before doing business therein to deposit with some officer of their home state a certain amount of securities as a trust fund for the exclusive benefit of their policyholders. In this state the general treasurer alone is charged with that trust and by §27-1-7 he is authorized to issue a certificate whenever an insurance company incorporated under the laws of this state has made such a deposit. Thereafter he is obligated under the positive mandate of the statute not to deliver up the trust securities unless the procedure prescribed in §27-1-8 has been complied with.

The obvious object of these statutory requirements is to assure the insurance authorities in other states where Rhode Island insurance companies may be allowed to do business

that the requisite trust fund for the benefit of policyholders is securely established by law beyond the possibility of impairment by any act of the company. To this end the legislature further carefully provided by §27-1-8 that if the fund was thereafter to be disestablished ample weekly notice for a period of long duration should first be published before the general treasurer would be allowed to surrender the securities.

It is fair to assume that the long notice required by §27-1-8 was intended to accord a reasonable measure of protection to policyholders in distant states who might have claims against the company under their policy contracts or agreements. And for that reason the statute further obligated the general treasurer not to deliver up the trust securities unless he was satisfied that the debts and liabilities of the company on such contracts or agreements were paid or extinguished. With any other debts or liabilities of the company he is not concerned since the trust fund is for the benefit of policyholders only.

On our view, therefore, of the special purpose of §§27-1-5 and 27-1-8 we are of the opinion that the trial justice erred in ordering the general treasurer to turn over forthwith to the receiver the securities in question without first giving him an opportunity to discharge the duty expressly incumbent upon him under §27-1-8. We construe that duty to be paramount. It is not impossible of performance as contended by the receiver. He now stands in the place of respondent's officers and may properly do what that section requires of the president or principal officer and secretary of respondent in order to obtain delivery by the general treasurer of the securities in the trust fund. The recognition of him in this capacity by the general treasurer will in the circumstances be a substantial compliance on his part with §27-1-8. After the prescribed notice has been published and the general treasurer has been reasonably satis-

fied of the rights of policyholders as specified in the statute the receiver will then be entitled to the securities.

It is true that this procedure will entail substantial delay, but this is precisely what the legislature intended as a further safeguard to the preferred rights of policyholders in the trust fund. That it may result in some detriment to creditors or other interested persons is of no consequence. Nor is it of controlling significance that such construction and application of §27-1-8 limits the superior court's authority under the Uniform Insurers Liquidation Act to appoint the director of business regulation as receiver of respondent with plenary power to take possession of all its assets. That act must be read in conjunction with §§27-1-5 and 27-1-8 which it did not supplant or modify. *Shine* v. *John Hancock Mutual Life Ins. Co.,* 76 R. I. 71; *Masterson* v. *Whipple,* 27 R. I. 192. On the contrary because of the special purpose §§27-1-5 and 27-1-8 were designed to serve we are of the opinion that the legislature intended them, as we have hereinbefore said, to be paramount.

We must assume that the legislature in enacting the Uniform Insurers Liquidation Act knew of the existence of its prior special legislation on the same subject matter embodied in §§27-1-5 and 27-1-8 and did not intend to disturb it. *Loretta Realty Corp.* v. *Massachusetts Bonding and Ins. Co.,* 83 R. I. 221. Moreover prior special legislation is not affected by a later general enactment unless it clearly appears therefrom that the legislature intended to modify the pre-existing special statute. *State* v. *Frank,* 38 R. I. 40; *Cahill* v. *Goodell,* 20 R. I. 481. In this connection it is significant that in enacting the Uniform Insurers Liquidation Act the legislature failed to include therein the usual concluding omnibus section providing that "all acts and parts of acts inconsistent herewith are hereby repealed." Whether or not this was a legislative oversight the absence of such a provision renders it difficult if not impossible to construe

that act as clearly intending that it should supplant or modify §§27-1-5 and 27-1-8. The general treasurer, therefore, is not presently in duty bound to comply with the order of the superior court.

## II

The appeal of complainant from the decree of the superior court awarding Attorney Colagiovanni a counsel fee of $5,000 is based substantially upon the ground that there is no evidence in the record that he represented respondent at any time in the receivership proceedings.

Mr. Colagiovanni concedes that he had no express contract or agreement with respondent but he contends that as a result of the request made to him by the receiver's predecessor in the office of director of business regulation he performed legal services in the indirect interest of respondent which ultimately made possible the appointment of the receiver in accordance with the Uniform Insurers Liquidation Act. On the basis of his understanding with the former director and the result accomplished by his legal services rendered pursuant thereto he claims the right to compensation on the theory of an implied contract.

The receiver originally disallowed the claim in order to obtain an adjudication thereof by the superior court. On complainant's appeal from that court's decree approving the claim the receiver has taken no position. In approving it the superior court appears to have rested its decision on the ground that, since the services which Mr. Colagiovanni performed ultimately resulted in benefit to respondent by reason of the appointment of the director as receiver rather than complainant's nominee, he should be reasonably compensated therefor.

Ordinarily the decision of the trial justice in a matter of this nature would not be disturbed unless it was clearly wrong. But this rule is applicable only where the decision is based upon substantial evidence and is not otherwise con-

trary to law. Here the trial justice states in his decision that the claimant had no contract with respondent. He based his allowance of the claim solely on the fact that the former director of business regulation had consulted the claimant concerning the right of the director to be appointed receiver and that as a result of such consultation the claimant performed services which ultimately led to such an appointment.

Nowhere in the record does it appear that the claimant represented the former director or the present director in the intervention proceedings which resulted in the appointment of the receiver. The former director at all times was represented by Herbert F. DeSimone, Esquire, counsel at that time for the department of business regulation. Attorney DeSimone filed the petition on behalf of the director to intervene in the receivership proceedings originally commenced by complainant. He appeared alone in support of such petition in the superior court and on appeal in this court. The former director testified that he did not hire the claimant as special counsel and it does not otherwise appear from the record that he was associated with Attorney DeSimone in the prosecution of the litigation which was ultimately successful in establishing the right of the director to intervene.

For some reason the former director did not press his right promptly and it was not until the appointment of his successor that a decree was duly entered appointing him the receiver instead of complainant's nominee. In that final step in the proceedings Attorney DeSimone no longer was counsel for the department but his successor adopted the pleadings which he, Attorney DeSimone, had previously filed. There is no evidence in the record that the claimant ever appeared in these final proceedings which alone resulted in the appointment of the present director as receiver. Consequently when the claimant presented his claim for

legal services rendered to respondent company the receiver in the face of this record disallowed it.

The trial justice justifies his decision in allowing it notwithstanding such record by the following statement: "* * * although he does not appear of record, as a matter of fact, he has been successful in preserving the assets of this company and in protecting the rights of the creditors as the law prescribes they shall be protected." We have searched the record in vain for this fact. It may well be that the claimant gave the former director the initial legal counsel which caused him to take action in the matter, but nowhere does the fact appear that he acted as counsel at any stage of the intervention proceedings either for the director or respondent. However, the trial justice appears to excuse such absence of a relationship of attorney and client by stating: "There is not a contract here in the sense of a written contract between the insurance company and Mr. Colagiovanni but there was a service rendered by him to this company at the request of a person who had a right to request him to do it." On the record before us, and it is only on that record Mr. Colagiovanni may rely to support his claim, we cannot agree with such statement.

It is unfortunate from the point of view of Mr. Colagiovanni's interest that he did not associate himself with Attorney DeSimone and request the former director to designate him as special counsel when he was consulted by the director at the inception of the state's interest in this receivership. That he did not do so leaves him in the predicament of having to resort to matters de hors the record to establish his claim. In our opinion the trial justice erred in considering such matters and in deducing therefrom an implied contract for services binding on the respondent.

The general treasurer's appeal from the decree ordering him to deliver forthwith the bonds in question to the receiver is sustained, and the decree appealed from is reversed; the complainant's appeal from the decree awarding

a $5,000 fee to Fred Colagiovanni, Esquire, as counsel for the respondent is sustained, and the decree appealed from is reversed; and the cause is remanded to the superior court for further proceedings in accordance with this opinion.

## APPENDIX A

General laws 1956, §27-1-5:

"Deposits with general treasurer to comply with laws of other states. — In all cases in which the laws of any other state of the United States now require and may hereafter require that the insurance companies incorporated by the laws of other states shall deposit, with some officer of the state in which such insurance company is incorporated, stocks or other securities in trust or for the benefit of policyholders of such companies as a condition for doing business in such other state, the general treasurer shall receive from any insurance company incorporated under the laws of this state stocks or other securities, including mortgages insured and debentures issued by the federal housing administration and obligations of national mortgage associations, in such amount as may be required by the laws of such other state or states, on deposit and in trust for the benefit of the policyholders of such company."

## APPENDIX B

General laws 1956, §27-1-8:

"Return of deposit on termination of business. — Whenever any insurance company which shall have so deposited stocks or other securities with the general treasurer shall desire to relinquish its business, the general treasurer shall, on application of such company, under the oath of the president or principal officer and secretary, give notice of such intention in two (2) newspapers published in this state, to be inserted at least twice a week for six (6) months, and after such publication the general treasurer, on being satisfied by an examination of the books and of the officers of such company under oath, that all its debts and liabilities are paid or extinguished upon any contract or agreement, shall deliver up to the company from whom he

received the same the stocks or other securities held by him belonging to such company."

ON MOTION FOR REARGUMENT

MARCH 27, 1962.

PER CURIAM. In the above-entitled cause, pursuant to our opinion in *Langdeau* v. *Narragansett Insurance Co.*, 94 R. I. 128, the appellee Fred Colagiovanni, Esquire, asked and received permission to present a motion for leave to reargue his claim to the fee of $5,000 which the superior court awarded to him for legal services rendered to respondent.

Upon consideration of his reasons we are of the opinion that they warrant a reargument but only for the purpose of showing cause wherein the court misconceived evidence that would justify awarding him a fee for legal services performed *in the intervention proceedings.*

As thus limited, the motion for leave to reargue is granted and such reargument is ordered on the calendar for Wednesday, April 4, 1962.

*J. Frederick Murphy, John F. Cuzzone, Jr.,* for complainant.

*J. Joseph Nugent,* Attorney General, *Francis A. Kelleher,* Special Counsel, for Raymond H. Hawksley, General Treasurer.

*Aram A. Arabian,* for Receiver

*Fred Colagiovanni,* pro se.