397 A.2d 884.

ROYAL LITTLE *vs.* CONFLICT OF INTEREST COMMISSION
OF RHODE ISLAND *et al.*

FEBRUARY 8, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, and Doris, JJ.

BEVILACQUA, C.J.    This case comes before us on appeal by the defendant, Conflict of Interest Commission (Commission), from a Superior Court judgment that the plaintiff was not required to file a financial statement with the Commission. The Superior Court found that the plaintiff, a member of the Narragansett Redevelopment Agency (Agency), was not "an officer or member of state or municipal government" as defined in G.L. 1956 (1969 Reenactment) §36-14-3(2) (Supp. 1977).[1] For the reasons stated herein we affirm the trial court's decision.

The facts are not in dispute. The record reveals that plaintiff had served as a member of the Agency since its inception. The plaintiff was originally appointed to the Agency by the president of the Narragansett Town Council under P.L. 1956, ch. 3654, §31.[2]

---

[1] General Laws 1956 (1969 Reenactment) §36-14-3(2) of the Conflict of Interest Act provides:

> " 'State or municipal appointed official' means an officer or member of state or municipal government who is appointed for a term of office specified by the constitution or a statute of this state or a charter or ordinance of any city or town; or who is appointed by or through the governing body or highest official of state or municipal government." The phrase "state or municipal government" is nowhere defined in the Act.

[2] Public Laws 1956, ch. 3654, §31 has been amended by P.L. 1972, ch. 97, §1 and is currently incorporated in G.L. 1956 (1970 Reenactment) §45-31-12 (Supp. 1977).

The Legislature created the Agency pursuant to §45-31-9. On or about May 14, 1976, the Legislature enacted into law "An Act Relating to Conflict of Interest." *See* § 36-14-1 to 19. The statute authorized the Commission to obtain financial statements from, among others, appointed members of state or municipal government. *See* §36-14-2, -3(2), -15, -16. Subsequent regulations promulgated by the Commission stated that appointed officials subject to its jurisdiction include members of a "state or municipal agency."[3] On or about May 31, 1977, the Commission forwarded a financial statement form to plaintiff requesting personal financial information from the previous year. The plaintiff responded by filing a request for a declaratory judgment and injunctive relief.

After hearing the evidence, the trial justice found that the Agency was not a part of state or municipal govenment and plaintiff could not be considered a state or municipal appointed official. Therefore, the Superior Court ruled that plaintiff was not subject to the filing provisions of the statute.

On appeal, the Commission argues that the plain and ordinary meaning of the phrase "state or municipal government" includes a redevelopment agency. The Commission

---

[3]Regulation 1001(b) defines an appointed official as:

"[A]ny person appointed to an executive position in a state or municipal agency as defined for a term of office specified by the constitution, or a statute of this state or a charter or ordinance of any city or town or who is appointed to an executive position in a state or municipal agency by the governor, the legislature, the highest official or governing body of any city or town or who holds such appointed office on or after January 11, 1977 except as provided in sub-paragraph (c)."

Regulation 1000(a)(13) defines state or municipal agency as:

"Any department, division, agency, commission, board, office, bureau, authority, any school, fire or water district within the State of Rhode Island; either branch of the Rhode Island General Assembly, an agency or committee thereof, the judicial branch, or any agency or entity which is a branch of the state or a political subdivision thereof. It does not include those advisory boards that have no authority to expend public funds other than reimbursement for personal expense or to otherwise exercise the power of the state or any political subdivision thereof."

also contends that the enactment of the Conflict of Interest Act and the Legislature's accompanying statement in §36-14-1 that "no elected or appointed state or municipal official use his office for personal gain in a manner inconsistent with the proper discharge of his duties" evidences a strong public policy for the inclusion of the plaintiff within the statute. The Superior Court judgment, according to the Commission, also renders ineffective other statutory provisions regarding conflicts of interest.

By rule, the Commission purported to include officers of municipal agencies within its jurisdiction. This court has previously held that the rule-making authority of an administrative agency shall not be extended so as to vary the statutory rights of individuals. In *Donahue v. Associated Indemnity Corp.*, 101 R.I. 741, 748, 227 A.2d 187, 190 (1967), we stated:

> "No state official by administrative action can affect the substantive rights of parties as they have been set forth by an affirmative act of the general assembly."

*See Statewide Multiple Listing Service, Inc. v. Norberg*, 120 R.I. 937, 942, 392 A.2d 371, 373-74 (1978); *Brier Manufacturing Co. v. Norberg*, 119 R.I. 317, 323, 377 A.2d 345, 349 (1977); *Allstate Insurance Co. v. Fusco*, 101 R.I. 350, 358, 223 A.2d 447, 452 (1966).

Administrative agencies such as the Commission are statutory creations possessing no inherent common-law powers. An agency cannot modify the statutory provisions under which it acquired power, unless such an intent is clearly expressed in the statute. As noted by the trial court, before a regulation can become operative, the necessary statutory authority for its promulgation must exist. *See Finn v. Planning and Zoning Commission*, 156 Conn. 540, 546, 244 A.2d 391, 394 (1968). The validity of the regulations at issue depends on whether the Legislature intended the phrase "state or municipal appointed official[s]," as used in §36-14-3(2), to embrace members of state or municipal agencies.

In order to do so, we must first decide what the General Assembly meant by the phrase "state or municipal government" as used in §36-14-3(2). Our duty in examining this section is to define the disputed terms and not to inject into them a meaning that would promote what we might consider proper public policy in eliminating conflicts of interest. The policy of the state regarding conflict-of-interest laws is constitutionally committed to the legislature, not the judiciary. Where a controversy arises concerning statutory terms, we must resolve it according to the legislative intent. *State* v. *Patriarca*, 71 R.I. 151, 154, 43 A.2d 54, 55-56 (1945).

It is a primary canon of statutory construction that statutory intent is to be found in the words of a statute, if they are free from ambiguity and express a reasonable meaning. *Statewide Multiple Listing Service, Inc.* v. *Norberg.* 120 R.I. at 942, 392 A.2d at 373. As this court stated in *State* v. *Patriarca*, 71 R.I. at 155, 43 A.2d at 56, "where the language * * * is plain and unambiguous, it declares its own meaning and there is no room for construction." Stated another way, statutory terms must be given their plain and ordinary meaning unless a contrary intent is clearly shown on the face of the statute. *Andreozzi* v. *D'Antuono*, 113 R.I. 155, 158, 319 A.2d 16, 18 (1974). *See Podborski* v. *William H. Haskell Manufacturing Co.*, 109 R.I. 1, 8, 279 A.2d 914, 918 (1971). This is especially true where, as here, the Legislature has not defined or qualified the words used within the statute. *Markham* v. *Allstate Insurance Co.*, 116 R.I. 152, 156, 352 A.2d 651, 653-54 (1976); *Pacheco* v. *Lachapelle*, 91 R.I. 359, 362, 163 A.2d 38, 40 (1960).

Notwithstanding the fact that a liberal interpretation of the words of a statute may result in the statute being inapplicable to the matter pending before the court, we may not alter the meaning to make it applicable and promote what we think a more desirable result. *State* v. *Patriarca*, *supra* at 155, 43 A.2d at 56. Moreover, we must presume that the Legislature, when enacting the Conflict of Interest Act, was familiar with our prior analysis of the relationship

between public corporations such as a redevelopment agency and municipal government. *See Romano* v. *Duke,* 111 R.I. 459, 462, 304 A.2d 47, 49 (1973); *Loretta Realty Corp.* v. *Massachusetts Bonding & Insurance Co.,* 83 R.I. 221, 225-26,114 A.2d 846,848-49 (1955).

This relationship has been examined on previous occasions. In *Kennelly* v. *Kent County Water Authority,* 79 R.I. 376, 381, 89 A.2d 188, 191 (1952), we held that the Kent County Water Authority was not a municipal corporation for purposes of filing rate schedules with the public utilities administrator. In so deciding, we noted that the fact that the authority's enabling legislation described it as a "body politic" and "public benefit corporation," "performing an essential governmental function" did not, in itself, render the authority a municipal corporation. *Id.* The same must be said for a redevelopment agency, in light of the similar language employed in its enabling legislation. *See* §45-32-5.

In some instances, public corporations similar to the redevelopment agencies have been held to be bound by certain rules that govern municipal corporations. In *Parent* v. *Woonsocket Housing Authoity,* 87 R.I. 444, 449, 143 A.2d 146, 148 (1958), we found it in the interest of public policy to rule housing authorities, like municipal corporations, without power to bind their successors contractually. We expressly stated, however, that housing authorities were not "municipal department[s]." Instead, we viewed the authority as having a "dual nature which partakes of a public as well as a private character." *Id.* at 447-48, 143 A.2d at 147-48.

Almost 14 years later, in the case of *Housing Authority* v. *Fetzik,* 110 R.I. 26, 33, 289 A.2d 658, 662 (1972), we again refused to include housing authorities within the scope of municipal government. We found that a housing authority could be considered a "person" for the purposes of standing to attack the constitutionality of a state statute. The distinction between municipal government and public corporations was further explained in the following passage:

"Although a housing authority and a municipal corporation have some attributes in common, a mere reading of the 'Housing authorities law,' G.L. 1956, ch. 25 of title 45, and a comparison of that statute with the various definitions of a municipal corporation, demonstrate the basic differences between them. The housing authority is not a political subdivision of the state. Once created it becomes an autonomous body, subject only to the limits of power imposed by law. As the plaintiff points out in its brief, actually a housing authority is one of a large class of corporations created by the government to undertake public enterprises in which the public interests are involved to such an extent as to justify conferring upon such corporations important governmental privileges and powers, such as eminent domain, but which are not created for political purposes and which are not instruments of the government created for its own uses or subject to its direct control." *Id.* at 32-33, 289 A.2d at 662.

The cases discussed above demonstrate that while we have in some instances clothed public corporations with some attributes of municipal government, we have never completely equated the two.

The cases also indicate that public policy considerations guided our evaluations of the relationship between municipal government and public authorities. Similar policy considerations are present in the case before us. There is merit in the Commission's argument that members of the Agency stand in a position of public trust and therefore should be subject to the requirements of financial disclosure.

Equally as important, however, is that the statute in question is penal in nature. Under §36-14-18[4] failure to file a

---

[4]General Laws 1956 (1969 Reenactment) §36-14-18 reads:

"Penalties. — Any person who knowingly and willfully violates the provisions of this chapter shall, in addition to the civil penalties provided herein, be

financial statement can result in the imposition of fines or imprisonment or both. We have previously held that penal legislation must be read in a narrow light. In such situations, the defendant "must be given the benefit of any reasonable doubt" when a court decides whether his activity is within the ambit of the statute. *State* v. *Simmons*, 114 R.I. 16, 18, 327 A.2d 843, 845 (1974); *State* v. *Beck*, 21 R.I. 288, 295, 43 A. 366, 368 (1899); *see State* v. *Nadeau*, 81 R.I. 505, 512, 105 A.2d 194, 198 (1954).

Viewed in this context, we are convinced that the phrase "state or municipal government" does not include members of redevelopment agencies. In addition, the Legislature was aware at the time it enacted the Conflict of Interest Act that this court had refused unequivocally to equate public corporations with municipal government. Equally important is the incongruity that would result if this court were to consider an official appointed by a municipality to be a member of state government. In light of these factors, it cannot be said with the certainty necessary in construing penal statutes that plaintiff falls within the ambit of the statute.[5]

Our holding today is further buttressed by the existence of prior special legislation relating to conflicts of interest embodied in §45-31-19[6] and addressed specifically to redevel-

---

punished by a fine of not more than five hundred dollars ($500) and/or imprisonment for no longer than one (1) year and/or forfeiture of the elective or appointive office held."

[5]The Commission suggests that such an interpretation of the Conflict of Interest Act renders nugatory other provisions regarding appearances by governmental officials before their respective agencies. *See* §36-14-4(e)(1), (2). We hold today only that these provisions are inapplicable to members of redevelopment agencies because we do not consider them part of a state or municipal government. The provisions remain applicable to any member of state or municipal govenment. Moreover, our holding, limited as it is, does not contravene the Act's basic goal of demanding financial integrity on the part of public officials. *Cf. Providence Journal Co.* v. *Mason*, 116 R.I. 614, 622-23, 359 A.2d 682, 686-87 (1976).

[6]General Laws 1956 (1970 Reenactment) §45-31-19 provides:

"No officer or employee of the community or of the agency who in the course of his duties is required to participate in the formulation of plans or

opment agencies. The General Assembly must be charged with knowledge of this prior specific provision when it enacted the Conflict of Interest Act. *Loretta Realty Corp.* v. *Massachusetts Bonding & Insurance Co.*, 83 R.I. at 225-26, 114 A.2d at 848-49. It is significant to note that the General Assembly did not expressly state in the general enactment that prior special legislation had been modified or repealed. *Langdeau* v. *Narragansett Insurance Co.*, 94 R.I. 128, 133, 179 A.2d 110, 113 (1962); *State* v. *Frank*, 38 R.I. 40, 42, 94 A. 665, 666 (1915). The absence of such a provision is further evidence that the Legislature viewed the redevelopment. agencies as separate and distinct entities regarding conflicts of interest.

The Commission further contends that the definitional sections of the statute evidence legislative intent to include the Agency as part of municipal government. In essence, the Commission asserts that clarification of the meaning of "state or municipal government" can be found in the statute's definition of "state or municipal agency" found in §36-14-3(3) which states:

> " 'State or municipal agency' means any department, division, agency, commission, board, office, bureau, authority, any school, fire or water district within Rhode Island; either branch of the Rhode Island general assembly or any agency or any committee thereof or any other agency that is in any branch of Rhode Island state or municipal government and which exercises govern-

---

policies for the redevelopment of a project area, or to approve such plans or policies, shall acquire any interest in any property included within a project area within the community. If any such officer or employee owns or has any financial interest direct or indirect, in any property included within such a project area he shall immediately disclose, in writing, such interest to the legislative body of the community and such disclosure shall be entered in the minutes of the agency and of the legislative body. Failure to so disclose such interest shall constitute misconduct in office. No payment shall be made to any member or officer of an agency for any property or interest therein acquired by the agency from such member or officer, unless the amount of such payment is fixed by court order in eminent domain proceedings, or unless such payment is unanimously approved by the legislative body."

mental functions other than in an advisory nature."

The Commission reasons from the use of the phrase "any other agency" that all municipal agencies are to be considered part of municipal government.

We do not agree. Section 36-14-3(3) is related to the obligations of elected or appointed officials of state or municipal government who enter into contracts with a state or municipal agency. We will not expand the apparently limited purpose of this definitional section to include an explanation of the relationship between municipal agencies and municipal government.

The Commission's appeal is denied and dismissed, the judgment appealed from is affirmed, and the cause is remanded to the Superior Court.[7]

Mr. Justice Weisberger did not participate.

*Edwards & Angell, John H. Blish, Robert G. Flanders, Jr., William P. Robinson III,* for plaintiff.

*Dennis J. Roberts II,* Attorney General, *Allen P. Rubine,* Assistant Attorney General, for defendants.

---

[7]Our holding today obviates the necessity to reach the plaintiff's claim that the statute, as applied to him, is unconstitutional.