[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This matter is presently before this court on defendant's motion to dismiss. Richard Tamburini (hereinafter "the defendant") is charged with negligently suffering the escape of convicted felon, Peter Gilbert, in violation of R.I. Gen. Laws 1956 (1981 Reenactment) § 11-25-6.
The facts of this case are as follows. On February 28, 1985, Peter Gilbert was arrested on minor drug and weapons charges. He was arraigned in District Court on March 8, 1985. In lieu of a bail determination, he agreed to become a witness against individuals accused of committing a series of murders. Accordingly, Gilbert signed a waiver of his constitutional rights and consented to be held in undefined informal custody by the Providence Police Department.
On August 1, 1985, Gilbert was arraigned in Superior Court on a charge of second degree murder and related capital offenses. He was ordered held without bail in the custody of the Providence Police.
On June 18, 1986, while still in Providence Police custody, Gilbert pleaded guilty, in a Florida Superior Court, to eight criminal counts of burglary and grand theft. On July 17, 1986, again while in Providence Police custody, Gilbert pleaded guilty, in a Maine Superior Court, to three felony charges of burglary. In these cases, the Florida and Maine Superior Courts each sentenced Gilbert to ten years to serve concurrent with his Rhode Island sentence, and within the custody of the Providence Police.
Gilbert remained in Providence Police custody until March 30, 1987, at which time he pleaded guilty to a variety of criminal charges, including murder. He received a fifty year sentence, forty years suspended and ten years to serve. Gilbert, however, was not sent to the Adult Correctional Institution; rather, he was returned to Providence Police custody retroactive to March 1, 1985.
On June 25, 1987, the Attorney General's Department filed a petition in the Superior Court requesting that the Providence Police be allowed to transfer Gilbert to an undisclosed safehouse. The petition was approved and signed by Justice Orton. The petition granted control of Gilbert's custody to the Providence Police, such control to be exercised in their discretion, and designated the defendant as the officer in charge of Gilbert's custody at that location.
On June 11, 1988, while still in Providence Police custody, Gilbert suffered a fatal heart attack at a roadside gasoline station in Connecticut. At the time of his death, Gilbert was unaccompanied by any police guard and was driving a car bearing a confidential Providence Police Department registration. In addition to this incident, the state asserts that between June 1985 and June 11, 1988, the defendant allowed Gilbert to travel continuously and repeatedly without a police escort. Said occurrences, the state alleges, included approximately forty-seven skydiving trips.
On June 10, 1991, the special statewide grand jury investigating matters relating to the custody of Peter Gilbert, returned an indictment charging the defendant with violating R.I. Gen. Laws 1956 (1981 Reenactment) § 11-25-6. This indictment specifically charges that the defendant, a lieutenant in the Providence Police Department at the time of Gilbert's custody, was the official responsible with securing Gilbert's custody and did by his continued negligence suffer and allow Gilbert to escape from the lawful custody of the Providence Police Department on numerous occasions from 1985 through 1988, the last such occasion being on June 11, 1988.
The Providence Police Department has received much criticism regarding the custody of Peter Gilbert. The actions of the police officers in charge of that custody, including the defendant, were blatantly inappropriate. Clearly, mistakes were made.[1] The paramount issue here, however, is not whether the defendant's conduct was appropriate; certainly it was not. The issue is whether the defendant's conduct was criminal.
I.
The defendant stands before this court accused of negligently suffering the escape of Peter Gilbert, a convicted felon, in violation of R.I. Gen. Laws 1956 (1981 Reenactment) § 11-25-6. This statute provides in full:
 Officer negligently allowing escape. — Every jailer or other officer who shall be convicted of negligently suffering any prisoner in his custody upon conviction or upon any criminal charge to escape, shall be punished by imprisonment for not more than (5) five years, or by a fine of not more than five hundred dollars ($500), or both.
In general, the state is required to prove every element of a crime beyond a reasonable doubt. Therefore, if as a matter of law an element of a crime cannot be proved, the indictment must be dismissed. The elements which must be proved under § 11-25-6 are as follows: (1) the defendant must fall within the definition of "jailer or other officer"; (2) the prisoner must have escaped; (3) that escape must have been from the defendant's custody; and (4) that escape must have resulted from the defendant's negligence.
The determination of whether the defendant was negligent is a question of fact to be decided by the jury; thus it will not be addressed here. Assuming arguendo, however, that the defendant was negligent in allowing Gilbert to travel unaccompanied, that negligence would not be culpable unless Gilbert actually escaped. Therefore, addressing the defendant's motion to dismiss, this court is limited to the threshold inquiries of whether the defendant was a "jailer or other officer" and whether Gilbert committed an escape from lawful custody, within the meaning of §11-25-6. If this court finds that the defendant was not a "jailer or other officer" or that Gilbert's actions did not constitute escape from lawful custody, then the defendant cannot be found to have negligently suffered an escape under § 11-25-6. The resolution of these issues will be addressed in turn.
II.
The determination of whether § 11-26-5 applies to the defendant in this action hinges on the language "jailer or other officer", as contained in that statute. It is well-settled in constitutional jurisprudence that criminal statutes must be construed strictly against the government or party seeking enforcement and liberally in favor of the accused. See, e.g.,Busic v. United States, 446 U.S. 398 (1980); Adams WreckingCo. v. United States, 434 U.S. 275 (1978); Little v. Conflictof Interest Commission, 397 A.2d 884 (R.I. 1979). Relying on this basic rule of statutory construction, see Sutherland Statutory Construction, Vol. 3, § 59.03, the defendant asserts that the terms "[j]ailer or other officer" should not be interpreted so broadly as to include a police officer involved in the type of custodial program at issue here.
The defense asserts that Title 11, Chapter 25 of the Rhode Island General Laws targets the Adult Correctional Institution and therefore does not contemplate the defendant. The defendant avers that the language used in other sections within Chapter 25 indicates that § 11-25-6 was not intended to apply beyond the prison context.
Specifically, defendant points to §§ 11-25-7 and 11-25-8. These sections utilize the language "confined in any prison, jail, lock-up, police station or place of detention." The significance of this language, the defense contends, is that it affords these sections broader application than that of §11-25-6. The defense reasons that the general assembly's use of specific language in other sections of Chapter 25, such as §§11-25-7 and 11-25-8, which extends application of those sections beyond the prison context, indicates that the general assembly necessarily must have intended to limit application of § 11-25-6
to the prison context because such language was not used therein. Therefore, the defense maintains, since the defendant was not a custodian of Gilbert in a prison context, then he may not be convicted under § 11-25-6.
This court does not agree with defendant's interpretation. The language in §§ 11-25-7 and 11-25-8 on which the defendant relies does not indicate that those sections have broader application than § 11-25-6; rather, such language is limiting language. The language "confined in any prison, jail, lock-up, police station or place of detention" is a restriction on the application of these sections to the specific locations provided for therein. The terms "jailer or other officer" as found in §11-25-6 affords that section a broader application than §§11-25-7 and 11-25-8. This broader application includes individuals such as the defendant, i.e., those charged with the custody of a prisoner outside the prison context.
Practically speaking, to construe § 11-25-6 as the defendant contends would leave any individual, other than a prison guard, who is charged with the custody of a convicted criminal free from any recourse relating to the negligent execution of his duties. Certainly, the legislature could not have intended such an absurd result.
Section 11-25-6 was originally enacted in 1896, when witness protection programs did not exist. Relying heavily on this fact, the defense asserts that the section should not apply to the defendant because the general assembly in 1896 could not have contemplated an individual such as the defendant in charge of such a program. As the state correctly asserts, § 11-25-6 was recodified in 1981, at a time when the legislature was presumably aware of alternatives to incarceration, such as work release and furlough programs, as well as witness protection programs. Thus, the terms "jailer or other officer" may include individuals, such as the defendant in this action, who are charged with the custody of a prisoner, although not in the prison context.
The defendant alternatively argues that if this court determines that § 11-25-6 does apply to this situation, then the statute as applied to him would be unconstitutional in that it did not provide adequate notice that such conduct was proscribed, as due process requires. It is well-settled, however, that the standard applied in determining whether the words and phrases employed in a statute provide sufficient notice is whether they give "adequate warning to a person of ordinary intelligence that his conduct is illegal by common understanding and practice."State v. Alegria, 449 A.2d 131, 133 (R.I. 1982); seeKolender v. Lawson, 461 U.S. 352, 357 (1982) (penal statutes must define criminal offenses with sufficient definiteness that ordinary people can understand what conduct is prohibited);United States v. Harriss, 347 U.S. 612, 617 (1954) ("The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden . . . no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.").
At the time of the incidents giving rise to this action, the defendant was a lieutenant in the Providence Police Department. Furthermore, he was certainly aware of the fact that Gilbert was a recently convicted murderer. This court is satisfied that as a police lieutenant and career law enforcement officer, the defendant was clearly an individual of at least ordinary intelligence. As such, the defendant was certainly aware that he would be subject to recourse if he negligently allowed a convicted murderer, with whose custody he was charged, to escape. Therefore, application of § 11-25-6 to the defendant does not violate the due process clause of either the United States or Rhode Island Constitutions.
For the reasons set forth above, this court finds that §11-25-6 is applicable to the defendant in this action, as custodian of Peter Gilbert, pursuant to the petition signed by Justice Orton on June 26, 1987.
III.
Before a finder of fact can decide whether the defendant negligently suffered Gilbert's escape, this court must determine whether Gilbert's actions constituted an escape within the meaning of the law. The term "escape" is not specifically defined in Rhode Island law. Courts and commentators generally agree, however, that it means "absenting oneself from custody without permission." United States v. Bailey, 444 U.S. 394, 407 (1980).[2] The determination of whether Gilbert's actions constitute an escape depends on whether at the time of his actions he was in the defendant's custody, and whether he possessed the requisite mens rea to absent himself from that custody.
The term custody does not necessarily connote physical restraint or incarceration. As the defense aptly points out, the word "custody" may mean anything from release on personal recognizance to 24-hour lock-up. Black's Law Dictionary
describes custody as follows: "[t]he term is very elastic and may mean actual imprisonment or mere power, legal or physical, of imprisonment of taking manual possession." Black's LawDictionary (6th Ed. 1986). Furthermore, in Lemme v. Langlois,
the Rhode Island Supreme Court held that a person on bail remains in custody in the eyes of the law. 244 A.2d 271 (R.I. 1968). InState v. Furlong, the court held that a prisoner allowed to engage in a work release program and given permission to travel to and from his place of employment without custodial supervision remains in custody. 291 A.2d 267 (R.I. 1972). The United States Supreme Court has held that a person is in custody whenever subject to restraints not shared by the general public. Jones v.Cunningham, 371 U.S. 236 (1968). Actual physical restraint is not necessary. Shauer v. Burleigh County, 371 F. Supp. 61
(D.N.D. 1985).
This court finds that Gilbert's status as a prisoner, while traveling unaccompanied, was akin to that of a prisoner on a work release or furlough program thus constituting custody within the holding of Furlong. Certainly, Gilbert did not have all the liberties afforded a free man, because his failure to return would have rendered him a fugitive from justice. Although he was not under direct supervision, the restraints placed on him were at least as burdensome as those placed on an individual on bail.Cf. Lemme v. Langlois, supra. Therefore, consistent withLemme v. Langlois and State v. Furlong, this court finds that the Providence Police maintained custody of Gilbert while he travelled without police escort.
The next issue this court addresses is whether Gilbert effectuated an escape while he was unaccompanied. So long as Gilbert intended to, and did, return, then he did not possess the requisite mens rea to absent himself from lawful custody, and hence did not commit an escape. Gilbert is now deceased. It is therefore impossible to ascertain his state of mind during his unaccompanied trips.
According to the state, Gilbert went on approximately 47 skydiving trips similar to the one he was on when he died, as well as numerous unaccompanied visits with friends, doctor's appointments, and meetings with his lawyer. Since he returned each time, this court is satisfied that he did not have the requisite intent to escape on any of those occasions. Furthermore, there has been no evidence presented which would indicate that Gilbert's last unaccompanied trip was different in any significant respect from his previous trips. After careful examination of Gilbert's actions this court is satisfied that there is insufficient evidence to support a finding beyond a reasonable doubt that Gilbert did not intend to return from his last fateful excursion, and hence did not commit an escape.
The state claims that the defendant's unaccompanied trips themselves constituted escapes. To support this position, the state points to a Memorandum of Agreement (MOA), which the state suggests embodies the agreement among Gilbert, the Attorney General's Office, and the Providence Police Department. The state relies specifically on paragraph 7 and 9 of this MOA, which read as follows:
 7. The defendant understands that he will be remanded to and in the custody of the Providence Police, until such time as his sentences have been completed.
 9. While the defendant is remanded to the Providence Police custody, his freedom is restricted to that authorized by the Providence Police and in any event at no time during his sentences will he be without law enforcement detention.
The state avers that this agreement is a formalization of a plea between the state and Gilbert, and that pursuant thereto the defendant had the responsibility for the Providence Police to assure compliance with its conditions, including the requirement that Gilbert remain in "law enforcement detention" during the term of his sentence. This court, however, does not agree with the state as to the significance of this MOA.
There is no evidence that this agreement was formally executed. The only copy provided to this court is not signed by any of the parties that the state contends are bound by its terms. Furthermore, it was not signed by a judge and therefore lacks the binding effect of a court order.
The document does indicate in typed print that the parties to the agreement are Peter Gilbert, the Attorney General's Department, and the Providence Police. During oral argument before this court on February 4, 1992, the state took the position that the agreement is binding upon the parties listed thereon.
This court's findings do not comport with the state's position. Absent signatures of the parties to this MOA, it is not effective. Moreover, the defendant was not specifically named thereon. The parties listed at the beginning of the document were Peter Gilbert, the Rhode Island Attorney General's Department, and the Providence Police. This court is unwilling to hold the defendant criminally responsible for the terms of an agreement which is not a court order, and to which he was not a signatory.
The first instance in which the defendant was named as having any responsibility regarding the custody of Gilbert was in the petition signed by a Justice Orton, on June 26, 1987. Pursuant to this petition, Gilbert was to be transferred to an undisclosed safehouse, and his custody at that location was to be controlled according to the discretion of the Providence Police Department, and under the command of the defendant.
Neither the waiver signed by Gilbert, by which he was originally placed in Providence Police custody, nor the June 26, 1987 petition, indicates that Gilbert was to remain incarcerated during the term of his sentence.[3] The terms and limitations of Gilbert's custody were within the purview of the defendant's authority. Thus, if the defendant, as the state pleads, gave Gilbert permission to travel unaccompanied, then technically he remained in Providence Police custody provided he acted within the guidelines of that permission. Therefore, since Gilbert returned on every occasion, this court is satisfied that his unaccompanied trips did not constitute escapes within the meaning of the law. Accordingly, since Gilbert did not escape, the defendant cannot be held responsible for negligently suffering that escape.
The state also argues that allowing Gilbert to travel unaccompanied constituted escape under the Florida and Maine sentences. To support this assertion the state points to language in the Maine Superior Court order of Judgment and Commitment which states that Gilbert was to be in the "custody of the Maine State Prison, to be punished by imprisonment for a term of [ten] years, concurrent with the time now serving in Rhode Island."[4] The state asserts that this language indicates that the Maine Superior Court expected that Gilbert would be imprisoned while serving his sentence in Rhode Island.
The state fails to note, however, that it was the Rhode Island Attorney General's Department that appeared before the Florida and Maine Superior Courts and requested that Gilbert remain in Providence Police custody while serving the sentences imposed by those courts. Furthermore, the state fails to point out that it was the Rhode Island Attorney General's Department that subsequently presented the petition to Judge Orton requesting that Gilbert be transferred to a safehouse where the terms of his custody were entirely within the undefined discretion of the Providence Police, with the defendant specifically named as the individual in charge. Essentially, the state is attempting to hold the defendant criminally liable for acting within authority procured by the state from the Rhode Island Superior Court. This court is not prepared to do so.
VI.
This court in no way condones the actions of the defendant in his handling of Peter Gilbert's custody. To the contrary, this court finds the defendant's actions irresponsible and inappropriate. According to the law, however, the defendant's actions were not criminal. Therefore, the defendant's motion to dismiss must be granted.
The fact that this court is dismissing the indictment against the defendant is no testimony as to the propriety of his conduct. This motion is granted solely on the grounds that due to the absence of specific guidelines for Gilbert's custody and to the discretion accorded the defendant, Gilbert's actions technically did not constitute escape. Clearly, the defendant's actions afforded Gilbert the opportunity to escape. Fortunately for the defendant, Gilbert chose not to do so. The irony of this situation is that the defendant is relieved of all criminal liability because Gilbert did not take advantage of the engraved invitation to escape which the defendant presented to him. This court believes that had Gilbert decided to escape he certainly could have done so and the defendant would have found himself dangling from the other end of the rope.
For the reasons set forth herein, the defendant's motion to dismiss is hereby granted.
[1] In this court's opinion, the first and perhaps most significant mistake was the placing of a witness for the state in the custody and control of a municipal agency with no experience in such matters. If a witness protection program such as that utilized in this case is used in the future, specific guidelines must be provided that set forth the duties and responsibilities of the parties involved. As a guide, this court strongly recommends that state agencies follow federal witness protection procedures, such as those set forth in 18 U.S.C. § 3521 (1984).
[2] In Bailey, the Court stated that the prosecution can establish escape under 18 U.S.C. § 751(a), upon demonstration "that an escapee knew his actions would result in his leaving lawful confinement without permission." Id. at 408. Black's LawDictionary defines escape as, "[t]he voluntary departure from lawful custody by a prisoner with the intent to evade the due course of justice." Black's Law Dictionary (6th Ed. 1986) (citing People v. Rivera, 542 P.2d 90, 92 (Colo. Ct. App. 1975)).
[3] This court notices that, the June 26, 1987 order indicates that Judge Orton recognized that Gilbert was incarcerated as of that date; however, the order does indicate that incarceration was expected to be continued at the safehouse. The only definition of the custody ordered was that it would be "controlled by the Providence Police and will be adequately secure and within their discretion", and that the defendant would be in charge of supervision of the safehouse.
[4] The Florida Order of Revocation of Probation (No. 82-274-CF) under which Gilbert was sentenced makes no reference to incarceration or imprisonment.